[S. F. No. 19580. In Bank. Jan. 17, 1958.]

Guardianship of the Persons and Estates of DONALD BRUCE HENWOOD et al., Minors. MARY G. ALEXANDER, Appellant, v. GEORGE DONALD HENWOOD et al., Respondents.

Fred B. Mellmann and Russell P. Studebaker for Appellant.

J. F. Coakley, District Attorney (Alameda), R. Robert Hunter, Chief Assistant District Attorney, Richard J. Moore, Deputy District Attorney, and Raymond N. Baker, for Respondents.

Edmund G. Brown, Attorney General, and Richard L. Mayers, Deputy Attorney General, as Amici Curiae, on behalf of Respondents.

TRAYNOR, J.—In June, 1955, the mother of Donald Bruce Henwood and Joel Arthur Henwood died. In July, 1955, their father relinquished them for adoption to the Alameda County Welfare Commission, a licensed adoption agency. In October, 1955, their maternal grandmother, Mary G. Alexander, petitioned to be appointed their guardian. At that time the children were 8 and 5 years of age. The trial court found that Mrs. Alexander, aged 63, was a fit person to have the custody of the children and that their father had placed them for adoption believing that "it would be in the best interests of said minors that they be adopted by parents selected by the Commission, in order that they might have

the benefit of a normal parental relationship.'' It concluded that ''by reason of the relinquishment of said minors and the fact that they are in the care, custody and control of a licensed County adoption agency, as a matter of law, this court is precluded from determining that it is either necessary or convenient that a guardian be appointed for either of said minors under the provisions of Sections 1405 and 1440 of the Probate Code.'' Mrs. Alexander appeals.

She contends that the provisions of the Civil Code with respect to adoptions do not affect the court's jurisdiction to appoint a guardian and that therefore the court erred in refusing to determine whether the best interests of the children established the necessity or convenience of her appointment and in dismissing her petition. Respondents contend, on the other hand, that by establishing a comprehensive scheme for the placement of children for adoption through licensed adoption agencies, the Legislature has necessarily precluded the appointment of a guardian once a child has been validly relinquished to an adoption agency.

Sections 1405 and 1440 of the Probate Code provide for the appointment of a guardian when necessary or convenient. The court is to be guided by ''what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare'' (Prob. Code, § 1406), and the guardian has the care and custody of the ward (Prob. Code, § 1500) subject to the regulation and control of the court. (Prob. Code, §§ 1400, 1512).

Section 224n of the Civil Code provides: ''The agency to which a child has been relinquished for adoption shall be responsible for the care of the child, and shall be entitled to the custody and control of the child at all times until a petition for adoption has been granted. Any placement for temporary care, or for adoption made by the agency, may be terminated at the discretion of the agency at any time prior to the granting of a petition for adoption. In the event of termination of any placement for temporary care or for adoption, the child shall be returned promptly to the physical custody of the agency.

''No petition may be filed to adopt a child relinquished to a licensed adoption agency except by the prospective adoptive parents with whom the child has been placed for adoption by the adoption agency. After the petition for adoption has been filed, the agency may remove the child from the prospective adoptive parents only with the approval of

the court, upon motion by the agency after notice to the prospective adoptive parents, supported by an affidavit or affidavits stating the grounds on which removal is sought.* If an agency refuses to consent to the adoption of a child by the person or persons with whom the agency placed the child for adoption, the superior court may nevertheless decree the adoption if it finds that the refusal to consent is not in the best interest of the child.''

It is apparent from the foregoing statutes that the adoption provisions and the guardianship provisions cannot operate to control the custody of the same child at the same time. A child cannot be in the custody of a guardian subject to the control of the court and at the same time be in the custody and control of the agency. In any given case the right to custody must rest with one custodian or the other for no machinery is provided whereby it may be divided between them. Neither in the statutes with respect to guardianship nor in those with respect to adoption, however, has the Legislature expressly provided which should prevail.

Mrs. Alexander contends that the guardianship provisions must necessarily be considered paramount, for otherwise no court would be available to the child to protect its interests during the period between relinquishment and the filing of a petition for adoption. She points out that even natural parents are not given such immunity from judicial control and contends that adoption agencies should likewise be subject to judicial supervision at all times. Moreover, she contends that the crucial decision to relinquish the child for adoption should be subject to review to determine whether in a given case guardianship rather than adoption will serve the best interests of the child. If review of this determination must be postponed until the court is called upon to approve or disapprove a petition for adoption, an event that may never occur, the child may be permanently deprived of the benefits of the care and custody of a guardian that its welfare demands.

Respondents contend, however, that adoption is preferred to guardianship (see *In re Santos,* 185 Cal. 127, 130 [195 P. 1055]), that the legislative scheme is designed to secure to children the benefits of adoption, that to permit the court to interfere with that scheme by appointing a guardian would subvert its purpose, and that the child's interest is adequately

*This sentence was added in 1957.

protected by the exercise of the parent's and agency's judgment that adoption is desirable and by the court review provided before adoption can take place.

■ In the absence of an express provision depriving the court of power to appoint a guardian of a child that has been validly relinquished for adoption, we do not believe that the adoption statutes may reasonably be interpreted as depriving such a child of the protection afforded by guardianship proceedings in a proper case. "Throughout custody law runs the thread of the interest of the state in the welfare of its children. It is this sovereign interest that functions like a protective arm to keep open the doors of the court to preserve, to control, and to modify the child's status in relation to its elders." (Lennard, *Enforcement and Modification of Child Custody Awards,* Family Law for California Lawyers 759.) ■ We cannot assume that adoption agencies will necessarily in all cases have such wisdom and competence that they may be set apart from other custodians and given *carte blanche* in their control of relinquished children until a petition for adoption is before the court. Certainly, the Legislature would not leave such a curtailment of the court's power to be drawn by inference alone from adoption provisions that contain no reference to guardianship proceedings. Moreover, in this respect, the provisions of Civil Code, section 224m, making the relinquishment binding on the parents and the agency add nothing to those of section 224n giving the agency responsibility for the care, custody and control of the child. ■ The child is not a party to the relinquishment agreement, but it is his interest that the court must protect in passing on a petition for adoption or for the appointment of a guardian. (See *Adoption of McDonald,* 43 Cal.2d 447, 461 [274 P.2d 860].)

■ Our conclusion that the adoption statutes do not preclude the appointment of a guardian for a validly relinquished child does not mean that the court may ignore the adoption procedures and supersede them by the appointment of a guardian on grounds that, absent relinquishment to a licensed agency, might support the conclusion that the appointment of a guardian was necessary or convenient. (*Cf. Guardianship of Minnicar,* 141 Cal.App.2d 703, 707 [297 P.2d 105].) The statutory provisions can be reconciled and effect given to both statutory schemes for protecting the welfare of the child only if the requirement of necessity or convenience for the appointment of a guardian is

interpreted in the light of the agency adoption provisions in the case of relinquished children. Only in this way is it possible not only to prevent abuses of the adoption procedure but also to protect that procedure from interference when it is functioning properly. ■ As stated above, adoption is ordinarily to be preferred to guardianship. ■ ''Whenever possible, such a construction should be given adoption laws as will sustain, rather than defeat, the object they have in view. [Citation.] The main purpose of adoption statutes is the promotion of the welfare of children, bereft of the benefits of the home and care of their real parents, by the legal recognition and regulation of the consummation of the closest conceivable counterpart of the relationship of parent and child. While a guardian of the person of a minor is charged with a high duty and serious responsibility in the care of his ward, nevertheless the status of guardian and ward falls short of the close approximation to the relationship of parent and child which is attainable through actual adoption culminating, as it does, in the child becoming a member, to all intents and purposes, of the family of the foster parents.'' (*In re Santos*, *supra*, 185 Cal. 127, 130.) ■ The Legislature has adopted a comprehensive plan for the adoption of relinquished children and has provided that a valid relinquishment is binding on the natural parent or parents and that no person other than prospective adoptive parents selected by the agency may petition for adoption. This procedure would obviously be frustrated, if at any time the court could determine in the exercise of its independent judgment and discretion that a guardian should be appointed and custody removed from the agency or prospective adoptive parents selected by it. The prohibition against the filing of a petition for adoption by a stranger could in effect be circumvented and the agency's primary responsibility to select a custodian and prospective adoptive parents nullified. In the light of these considerations, we conclude that the statutes governing the adoption of relinquished children express by clear implication a legislative determination that the appointment of a guardian is not necessary or convenient while the adoption procedure is running its proper course. Accordingly, in the absence of a showing that the agency is unfit to have the temporary custody of the child or that it is improbable that the child will be adopted, the appointment of a guardian is neither necessary nor convenient. On the other hand, if the agency is shown to be unfit, the child's immediate welfare demands interven-

tion, and if it is shown that adoption is improbable, continued waiting-room custody by the agency can no longer be justified as promotive of adoption, and the guardianship of a willing relative may well better serve the best interests of the child.

Ordinarily, it may be assumed that the natural parents and the agency have the competence to decide that adoption is preferable to guardianship. This decision, however, must be approved by the court before adoption can take place and may be challenged in guardianship proceedings if it appears that it is improbable that adoption will occur. It is true that in the interim changes affecting the child may take place, but the risk of harm therefrom is materially less than the risk of harm that would flow from permitting every adoption proceeding to be halted midstream for a judicial determination of whether guardianship might be preferable. The legislative choice between these risks is both apparent and reasonable.

Although no showing was made in the present case that the agency was unfit to have temporary custody of the children or that adoption was improbable, the trial court's ruling was based on the erroneous view that it had no jurisdiction in any case to appoint a guardian after a valid relinquishment had been made. Under these circumstances Mrs. Alexander should be afforded the opportunity to make a showing of necessity or convenience as herein defined.

The judgment is reversed.

Gibson, C. J., Shenk, J., Carter, J., Spence, J., and McComb, J., concurred.

Schauer, J., concurred in the judgment.