[L. A. No. 25455. In Bank. July 1, 1960.]

Adoption of MICHAEL ROY BARNETT, a Minor. LURA KATHERINE DAVEY, Petitioner and Appellant, v. LOS ANGELES COUNTY BUREAU OF ADOPTIONS, Objector and Appellant.

L. H. Phillips for Petitioner and Appellant.

Harold W. Kennedy, County Counsel, and Jean Louise Waller, Deputy County Counsel, for Objector and Appellant.

Stanley Mosk, Attorney General, and Richard L. Mayers, Deputy Attorney General, as Amici Curiae on behalf of Objector and Appellant.

SCHAUER, J.—Lura Katherine Davey, adopting mother, appeals from an order granting the motion of the Los Angeles County Bureau of Adoptions, objector, for a new trial after an order which granted Mrs. Davey's petition to adopt a minor child. The bureau prosecutes a cross-appeal from the order of adoption.[1] The judge who granted the new trial (and who was not the judge who heard the testimony and ordered the adoption) did so on the ground that the original trial judge erred in law by determining that the natural mother met the statutory requirements as to consent to adoption[2] by

---

[1] The natural mother also filed a notice of cross-appeal, but she has not appeared on appeal.

[2] Section 224 of the Civil Code provides that ''A legitimate child cannot be adopted without the consent of its parents if living; . . . nor an illegitimate child without the consent of its mother if living; except that the consent of a father or mother is not necessary in the following cases:

''1. When such father or mother has been judicially deprived of the

her formal consent to adoption by Mrs. Davey and her husband, from whom Mrs. Davey has since been divorced, followed by the natural mother's informal consent, expressed in a letter to Mrs. Davey, with knowledge that the Daveys had been divorced, that the child be adopted by Mrs. Davey alone. We have concluded that the granting of a new trial on this ground, in the circumstances hereinafter more particularly related, was erroneous, and that the order of adoption should be affirmed.

The natural mother, a resident of Nebraska, came to California in the fall of 1956 for the purpose of giving birth to her child. She had instituted a divorce proceeding against her first husband, Barnett, in February, 1956, and a final decree of divorce was entered in Nebraska on October 26, 1956. The child, a boy, was born on October 30, 1956. On November 2, 1956, the natural mother voluntarily signed a consent to adoption by Mr. and Mrs. Davey in the presence of their attorney, and on November 19, 1956, after being interviewed by representatives of the Bureau of Adoptions, the natural mother willingly executed the form of consent required by section 226 of the Civil Code, *supra*, footnote 2. This formal consent states, among other things, "it being fully understood by me that with the signing of this document my consent may not be withdrawn except with court approval." The natural mother told the Daveys' attorney and the representatives of the bureau, and the formal consent states, that the child's natural father is Paul Mentzel, not the natural mother's

custody and control of such child (a) by order of the juvenile court . . .'' (Other exceptions are not here material.)

Section 226 of the Civil Code in pertinent part provides, ''[I]n all cases in which consent is required . . . the consent of the natural parent or parents to the adoption by the petitioners must be signed in the presence of an agent of the State Department of Social Welfare or of a licensed county adoption agency on a form prescribed by such department and filed with the clerk of the superior court, in the county of the petitioner's residence,'' *or if the natural parent is out of California the consent ''may be signed before a notary or other person authorized to perform notarial acts,* and in such case the consent of the Department of Social Welfare or of a licensed county adoption agency will also be necessary . . .

''. . . [I]f said department or agency fails . . . to give its consent to an adoption in those cases where a consent is required by this chapter, . . . the petitioner [for adoption] may appeal from such failure or refusal to the superior court of the county in which the petition is filed,'' and after notice to the department and the filing by the department or agency of its findings and reasons for refusal to consent to the adoption, *''the court may, if it deems that the welfare of the child will be promoted by said adoption, . . . grant the petition without such consent.''* (Italics added.)

first husband Barnett. Soon after the birth of the child the natural mother returned to Nebraska.

On November 4, 1956, the Daveys took the boy into their home and he has since resided with Mrs. Davey and another boy, two years older, whom the Daveys had adopted and whom the minor regards as his brother. On November 7, 1956, the Daveys filed their petition to adopt the minor.

On May 9, 1957, the bureau filed its report which found that the minor was a proper subject for adoption and that the Daveys' home was suitable, *accepted the consent of the natural mother,* and recommended that the child remain in the Daveys' home but that the petition for adoption be denied without prejudice because the whereabouts of Barnett, the disavowed but (under Civ. Code, § 194) presumptive father, was unknown and his consent could not be obtained. It is obvious that the court at this time had jurisdiction of the subject matter.

In June, 1957, the natural mother, still in Nebraska, married one Robert Cook. In November, 1957, the Daveys separated. When Mrs. Davey told a representative of the Bureau of Adoptions that she and Mr. Davey were planning to seek a divorce, such representative informed Mrs. Davey "that it would be our policy to notify the natural mother through the State Department of Social Welfare of Nebraska."

Early in May, 1958, Mrs. Davey telephoned to the natural mother in Nebraska and the natural mother learned for the first time the identity of the adopting mother (whom the natural mother had met through her aunt in California). Mrs. Davey told the natural mother that she feared that the baby would be taken from her. On May 16, 1958, the natural mother wrote to Mrs. Davey that "I'm very happy with the very wonderful mother he has got and will do everything I can to see that you keep him with you always."

Again on July 17, 1958, the natural mother, with knowledge that Mrs. Davey had instituted a divorce proceeding, wrote Mrs. Davey that "I . . . hope with all my heart that they won't take the baby from you ever. I only hope and pray that he isn't put in a home for any length of time because that is the last place for him to go. Bob [the natural mother's then husband] has said that before they put him in a home, we will take him . . . I haven't heard a thing from the Adoption Board. . . . [A]s far as I'm concerned, you won't ever have to worry about me taking him from you except in case like I have mentioned above."

On July 29, 1958, an interlocutory decree of divorce of the Daveys was entered.

Thereafter, on behalf of the bureau, a representative of the Nebraska Division of Public Welfare interviewed the natural mother and her then husband, Cook, and the natural mother wrote to the bureau that she and Cook wished to have custody of the child and Cook wished to adopt him. On August 29, 1958, the bureau filed its supplemental report stating that Mrs. Davey alone wished to adopt the boy but that Mr. Davey did not, and recommending that because of the Daveys' divorce and the natural mother's marriage to Cook the child be taken from Mrs. Davey and given to the natural mother.

On September 3 and 17 and October 17 and 20, 1958, the Honorable A. E. Paonessa, Judge of the Los Angeles Superior Court, heard (in addition to lengthy legal arguments) conflicting testimony, including that of the natural mother who had come to California for the hearing, and that of Mrs. Davey, concerning which home would better serve the child's welfare. During the course of the hearing Mr. Davey withdrew as a petitioner for adoption and Judge Paonessa treated the petition as one by Mrs. Davey only. On September 12, 1958, the natural mother filed her petition for approval of withdrawal of consent to adoption.[3] In her testimony of October 17, 1958, the natural mother for the first time in this proceeding took the position that the natural father of the child was not Paul Mentzel (the father named in the formal consent) but Barnett, her first husband and the presumptive father. On October 20, 1958, Barnett was deprived of custody by order of the juvenile court.

On November 6, 1958, Judge Paonessa found that "it is for the welfare and best interests of said minor that the petition of [the natural mother] . . . to withdraw her consent be denied," that "it is for the welfare of said minor that he be adopted by the petitioner, Lura Katherine Davey, alone," and that Mrs. Davey "is able to care for said child in such a

---

[3]Section 226a of the Civil Code provides that "Once given, consent of the natural parents to the adoption of the child by the person or persons to whose adoption of the child the consent was given, may not be withdrawn except with court approval. . . .

". . . If the court finds that withdrawal of the consent to adoption is reasonable in view of all the circumstances, and that withdrawal of the consent *will be for the best interests of the child*, the court shall approve the withdrawal of the consent; otherwise the court shall withhold its approval. . . ." (Italics added.)

manner that his interests will be promoted by the adoption." Judge Paonessa denied the petition of the natural mother and ordered adoption by Mrs. Davey.

The bureau, which had appeared at the adoption hearing as objector, moved for a new trial on the stated grounds of insufficiency of the evidence and error in law occurring at the trial. Because of the illness of Judge Paonessa, the motion for new trial was heard by the Honorable William B. Neeley. The testimony had not then been transcribed, but the reporter who had reported it was present and counsel for Mrs. Davey (in accord with Code Civ. Proc., § 660[4]) asked that the reporter read his notes. Judge Neeley, without any expressly stated ruling on the request, heard argument as to other matters. Thereafter counsel for Mrs. Davey said, "[I]f you could read the transcript of the evidence, if your Honor please, you would have ruled no different than Judge Paonessa," and the court said, "Unfortunately, that's not possible, I guess." Judge Neeley granted the motion for new trial on the ground that as a matter of law there was not sufficient consent of the natural mother to adoption by Mrs. Davey alone.

■ The Bureau of Adoptions urges that Judge Neeley's ruling is correct because, it says, as a jurisdictional prerequisite to an order of adoption by Mrs. Davey alone the natural mother would have to execute a consent naming Mrs. Davey as the only adopting parent, and such consent would have to be executed in precise compliance with section 226 of the Civil Code, *supra*, footnote 2; i.e., if executed in California it would have to be "signed in the presence of an agent of the State Department of Social Welfare or of a licensed county adoption agency on a form prescribed by such department," or if executed outside this state it would have to be "signed before a notary or other person authorized to perform notarial acts. . ." In our opinion neither section 226 nor any other law of this state, statutory or decisional, imposes any such purely mechanical requirements, and justice and reason forbid them. ■ An adoption proceeding, like divorce, creates a status and is essentially a proceeding in rem. (*Estate of Smith* (1948), 86 Cal.App.2d 456, 468 [6] [196

---

[4]Section 660 of the Code of Civil Procedure provides that "when the proceedings at the trial have been phonographically reported, but the reporter's notes have not been transcribed, the reporter must upon request of the court or either party, attend the hearing of the motion and shall read his notes, or such parts thereof as the court, or either party, may require."

P.2d 842] ; *Rediker* v. *Rediker* (1950), 35 Cal.2d 796, 801 [2] [221 P.2d 1, 20 A.L.R.2d 1152] ; *Hudson* v. *Hudson* (1959), 52 Cal.2d 735, 742 [4] [344 P.2d 295].) ▮ Jurisdiction of the subject matter and of the essential parties, once acquired, is not lost by the mere circumstance that one of the adopting parents, through death or divorce, ceases to be a petitioner.

▮ We can agree with the general proposition (for which the bureau and the attorney general as amicus curiae on its behalf cite *Estate of Sharon* (1918), 179 Cal. 447, 454 [177 P. 283] ; *Matter of Cozza* (1912), 163 Cal. 514, 522 [126 P. 161, Ann.Cas. 1914A 214] ; *In re Barents* (1950), 99 Cal. App.2d 748, 750 [222 P.2d 488] ; and *Arnold* v. *Howell* (1950), 98 Cal.App.2d 202, 207 [3] [219 P.2d 854]) that consent of the natural mother (in situations other than those which are excepted by statute and which are not here pertinent) is a jurisdictional prerequisite to adoption. ▮ But we cannot agree with the further view, quoted by the bureau from *In re Newman* (1927), 88 Cal.App. 186, 189 [1, 2] [262 P. 1112], that ''[S]ince the statutes relating to adoption are in derogation of the common law, the rule of strict construction applies, especially when the purpose or effect thereof is to deprive a natural parent of the possession of his child; and the courts, being solicitous in preserving the integrity of the family and zealous to protect the rights of the parents, will construe every intendment thereof in favor of the claim of the natural parent, all doubts being resolved in his favor; and if the statute is open to interpretation, it should be construed in support of the rights of the natural parent.''

Rather, ''The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this code. . . . [I]ts provisions are to be liberally construed with a view to effect its objects and to promote justice.'' (Civ. Code, § 4.) In the instant case the ''family'' whose integrity Judge Paonessa was properly zealous to preserve comprised Mrs. Davey, the subject minor, and the other adopted child of Mrs. Davey. ▮ ''Whenever possible, such a construction should be given adoption laws as will sustain, rather than defeat, the object they have in view. [Citation.] ▮ The main purpose of adoption statutes is the promotion of the welfare of children, bereft of the benefits of the home and care of their real parents, by the legal recognition and regulation of the consummation of the closest conceivable counterpart of the relationship of parent and child.'' (*In re Santos* (1921), 185 Cal. 127, 130 [195 P.

1055], quoted with approval in *Adoption of McDonald* (1954), 43 Cal.2d 447, 459 [19] [43 P.2d 860].) The rule of strict construction of our adoption statutes in favor of the natural parents, stated in *Estate of McCombs* (1917), 174 Cal. 211, 214 [162 P. 897]; *In re Cordy* (1915), 169 Cal. 150, 154 [146 P. 532]; *Matter of Cozza* (1912), *supra,* 163 Cal. 514, 524; *Ex parte Clark* (1891), 87 Cal. 638, 641 [25 P. 967]; *In re Hickson* (1940), 40 Cal.App.2d 89, 92 [2] [104 P.2d 411]; *In re Christie* (1929), 98 Cal.App. 158, 163 [2] [276 P. 1045]; and *In re Newman* (1927), *supra,* 88 Cal.App. 186, 189 [1], being inconsistent with the rationale of the decisions of this court in *In re Santos* (1921), *supra,* 185 Cal. 127, 130 [2], and *Adoption of McDonald* (1954), *supra,* 43 Cal.2d 447, 459 [19], 461 [21], as well as with Civil Code, section 4, is disapproved.

The bureau urges that the law is, or should be, as stated in the Department of Social Welfare's Manual of Policies and Procedures on Adoptions in California, section 345.2, and the department's handbook explanatory of its formal regulations; i.e., "The consent signed by the natural parent agreeing to the adoption of a child by a married couple shall not be used in completing the adoption by one of them alone. . . . The parent, if unwilling to have the child adopted by a single person, could properly upset the decree if she wished to do so." In *Adoption of Parker* (1948), 31 Cal.2d 608, 615 [6] [191 P.2d 420], with reference to this manual, it is said that "administrative interpretations such as these will be accorded great respect by the courts and will be followed if not clearly erroneous." The same volume of our reports in which the Parker opinion appears, however, contains recognition of the familiar rule that "although contemporaneous construction by officials charged with the administration of a statute or ordinance is given great weight, 'final responsibility of the interpretation of the law rests with the court. "At most administrative practice is a weight in the scale, to be considered but not to be inevitably followed." ' " (*Johnston* v. *Marin County* (1947), 31 Cal.2d 66, 74 [7] [187 P.2d 686].)

 To uphold the department's rule in circumstances such as those of the instant case would deprive the court of power to order an adoption which (as found by Judge Paonessa upon sufficient evidence) is for the best welfare of the child, and to which the natural parent in fact freely consented (until her belated change of mind as to the suitability of Mrs.

Davey, accompanied by her change of mind as to whom she would claim as the natural father). Section 226 need not be given such a harsh, unreasonable construction. ■■■■ The manifest overall purpose of the requirements of the section quoted *supra,* footnote 2, as they relate to the present problem, is to prove that the natural mother's written declaration of consent to the adoption actually was knowingly and freely signed by her. Here that purpose is fully accomplished; there is no question that the natural mother in California freely and formally consented to adoption by Mr. and Mrs. Davey and there is no question but that thereafter, with knowledge of Mrs. Davey's changed domestic situation, the natural mother, by letters from Nebraska, willingly and knowingly consented to adoption by Mrs. Davey alone. Judge Paonessa, with ample support in the evidence, found "that the welfare of the child will be promoted by said adoption" and as legally authorized by section 226 "grant[ed] the petition without . . . consent [of the bureau]."

■■■■ As between the welfare of the child and the mechanical requirement of a notarial acknowledgment on the natural mother's letters declaring and confirming as to Mrs. Davey alone her consent to the adoption originally and formally executed to Mr. and Mrs. Davey, the welfare of the child should prevail; thereby also will be preserved the integrity of the family of Mrs. Davey and her two adopted sons.

For the reasons above stated the order granting a new trial is reversed and the order of adoption is affirmed.

Gibson, C. J., Traynor, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.