[L.A. No. 29951. In Bank. May 3, 1972.]

SAN DIEGO COUNTY DEPARTMENT OF PUBLIC WELFARE,
Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
JESSIE S. et al., Real Parties in Interest.

In re Homer E. Detrich, as Director, etc., on behalf of BABY M.
on Habeas Corpus.

(Two Proceedings.)

2

**COUNSEL**

Robert G. Berrey, County Counsel, and Lloyd M. Harmon, Jr., Deputy County Counsel, for Petitioner.

No appearance for Respondent.

Richard F. Gerry, Casey, McClenahan & Fraley and Thomas W. Hauser for Real Parties in Interest.

**OPINION**

**BURKE, J.**—The San Diego County Department of Public Welfare, a licensed adoption agency (hereinafter Department), petitions for writ of mandate/prohibition directing the San Diego Superior Court, respondent, (1) to set aside its orders granting letters of guardianship to Jessie S. and to enter orders denying the guardianship petition, (2) to set aside its order denying Department's motion for summary judgment in the Matter of Petition of Philip S. and Jessie S. (hereinafter Real Parties in Interest), adopting parents and real parties in interest, and enter orders granting summary judgment, and (3) that the care and custody of Baby Girl M. be delivered to Department.

We issued an alternative writ of prohibition directing respondent court to refrain from taking any further action upon the guardianship and adoption petitions of the Real Parties in Interest and to enter the orders prayed

for in Department's petition, or to show cause why it had not done so and why a peremptory writ should not be issued.

A return to the writ was filed by the Real Parties in Interest. After consideration of the issues presented by the unusual factual circumstances of this case, we have concluded that the order of respondent court upon the guardianship petition is to remain in effect while the Real Parties in Interest's petition for adoption is heard and that the alternative writ be discharged allowing respondent court to proceed with its determination as to what would be in the best interest of the child involved.

Baby Girl M. was born to Barbara J. M. on June 14, 1970. Mrs. M. was separated from her husband at the time of the child's conception. Prior to the birth of the baby, Mrs. M. had arranged through her physician to place the child for adoption with Real Parties in Interest. On June 17, 1970, three days after the child was born, Mrs. M. signed an "Infant Release Report" which authorized the hospital to release the baby to the Real Parties in Interest for purposes of adoption. The consent form states that "This consent is for the release of my child from the hospital only and does not constitute a consent or relinquishment of my child for adoption."

Thereafter, the Real Parties in Interest took the child into their home in San Diego where she has resided ever since. In addition to providing support and regular medical care to the child, the Real Parties in Interest have taken her to an orthopedist for the correction of a slight birth defect in her leg. Treatment was still in progress at the time of the hearing on the guardianship petition. The Real Parties in Interest also paid for Mrs. M.'s natal care.

As a preliminary step to adoption proceedings on October 7, 1970, the superior court awarded sole custody of the child to the natural mother stating that the relationship of parent and child does not exist between the child and her presumptive father, Ronald M. The legal expenses for this proceeding were also paid by the Real Parties in Interest.

On October 29, 1970, the Real Parties in Interest filed a petition for the adoption of Baby Girl M. Gloria D. Austin, an adoption worker, was assigned by Department to accept Mrs. M.'s consent to the adoption and prepare a report as required by Civil Code section 226.2.[1] Mrs. Austin's

---

[1]Civil Code section 226.2 provides: "In all cases of adoption in which no agency licensed to place children for adoption is a party, it shall be the duty of the Department of Social Welfare or of the licensed county adoption agency to accept the

first contact with the natural mother, Mrs. M., was by telephone. In her testimony relative to this conversation, Mrs. M. asserted the social worker asked her whether she was "aware that these people with whom you have relinquished your child are 48 and 62 years old."[2] This information was not solicited by Mrs. M. Thereafter, the social worker visited Mrs. M. at her home and told her that she had the right to sign the consent, or to refuse and then to relinquish the child to the Department in which case, within a period of two months, the child would be placed with adoptive parents younger than the Real Parties in Interest.

On February 2, 1971, seven and a half months after the birth of the child, Mrs. M. signed a "Refusal to Consent" to the adoption of her child by the Real Parties in Interest. On February 5, Mrs. Austin, the social worker, submitted her report to the court recommending that the petition for adoption be denied on the basis of this refusal. Jessie S. thereupon filed her petition for guardianship of Baby Girl M. On February 17, 1971, with knowledge of the pending guardianship matter, Department obtained Mrs. M.'s consent to relinquish the child for adoptive placement pursuant to Civil Code section 224m,[3] with the social worker signing the document as a witness.

A hearing on the petition for guardianship was held before respondent court on March 12, 1971. Department objected to the guardianship on the grounds that the baby had been relinquished to it for placement. The

---

consent of the natural parents to the adoption of the child by the petitioners and to ascertain whether the child is a proper subject for adoption and whether the proposed home is suitable for the child, prior to filing its report with the court."

[2]The true ages of the Real Parties in Interest at the time of the guardianship proceeding do not appear from the record. The Real Parties in Interest claim that Jessie S. was 44 years of age and that Philip was 58. Mrs. Austin testified that Mrs. M. wanted proof of the Real Parties in Interest's ages but that such proof was never furnished. The trial court did not make any findings on this issue.

[3]Civil Code section 224m provides in part: "The father or mother may relinquish a child to a licensed adoption agency for adoption by a written statement signed before two subscribing witnesses and acknowledged before an authorized official of an organization licensed by the State Department of Social Welfare to find homes for children and place children in homes for adoption. Such relinquishment, when reciting that the person making it is entitled to the sole custody of the minor, shall, when duly acknowledged before such officer, be prima facie evidence of the right of the person making it to the sole custody of the child and such person's sole right to relinquish.

". . . . . . . . . . . . . . . .

"The relinquishment authorized by this section shall be of no effect whatsoever until a certified copy is filed with the State Department of Social Welfare, after which it is final and binding and may be rescinded only by the mutual consent of the adoption agency and the parent or parents relinquishing the child."

probation report before the court indicates that "the child has received excellent care from [the RPI] during the first eight months of her life," but recommends that the petition be denied on the basis of the Real Parties in Interest's ages and the natural mother's desire that the child be raised by a younger couple.

The natural mother testified at the hearing that she had had no objection to the adoption prior to her contact with Mrs. Austin, the social worker, but that she became uncertain about the Real Parties in Interest's ages after speaking with Mrs. Austin. She stated that she wanted the baby placed in a home with younger parents and that her only objection to the Real Parties in Interest was their ages. Mrs. M. also testified that since the time she had given the child to the Real Parties in Interest at the hospital she had never desired to take the child back and raise the baby herself.

The social worker testified that she had no rule of thumb that persons over the age of 38 are not proper persons to be considered as adoptive parents but that she felt that "a parent should be able to live long enough to rear a child to adulthood" which she defined as being 18 to 21 years. She stated that whether a person with a life expectancy of 33.8 years is fit to become an adoptive parent would depend upon the circumstances. Mrs. Austin also testified that she approached the case from the beginning with a point of view that the adoption was an "irregular placement" because it was arranged by Mrs. M.'s attending physician.

Mary Jane Redwine, chief of Department's adoption services section, testified that they had more requests to adopt pre-school-age children than they could possibly fulfill and that although the agency no longer follows a rule of thumb that no person above the age of 38 is fit to adopt a young child, "it would be extremely rare, all things taken together, that we would look favorably upon an older couple for a new-born infant."

At the close of the hearing, the trial court announced its oral decision that the guardianship petition would be granted. In its formal findings of fact and conclusions of law, signed on June 28, 1971, the court found that Jessie S. and her husband "are fit and proper persons to have care, custody and control of said minor"; "That said minor was born with a birth defect, which the petitioner and her husband have caused to be treated by proper medical personnel"; that the social worker, "Mrs. Austin contacted the natural mother and suggested to her that the petitioner and her husband were too old to adopt this child and induced said natural mother to refuse to consent to the adoption"; that the relinquishment signed by Mrs. M. was

obtained by Department in an attempt to defeat the guardianship petition and "is of no force and effect because it was obtained during the pendency of the within proceedings"; that "The natural mother of said minor abandoned said minor on or about June 14, 1970" and that "The natural mother of said minor at the time of the birth of the child did not wish to keep the child, at no time in the interim has desired to have the child returned to her, and does not now wish to have the child returned to her care, custody and control"; and that "It is doubtful that the minor child herein, if relinquished to the San Diego County Department of Public Welfare, would be placed within a reasonable period of time by them in a home of the same character and quality as the home of the petitioner herein."

The trial court concluded as a matter of law that Jessie S. was a fit and proper person to have the care, custody and control of the child, that it was abandoned by its mother, that no valid relinquishment had been given by the natural mother prior to the filing of the guardianship petition, and that the granting of the petition "is in the best interest of the minor child."

In the adoption proceeding, pending in a different department of the respondent court, Department filed a motion for summary judgment on April 19, 1971. The grounds asserted in support of the motion were that respondent court no longer had jurisdiction to consider Real Parties in Interest's adoption petition by virtue of the fact that the child had been relinquished to Department by her natural mother and that the natural mother had refused to consent to the adoption by Real Parties in Interest. After a hearing, the motion was denied.

Department thereafter filed a petition for an alternative writ of mandate/prohibition and a petition for habeas corpus in the Court of Appeal for the Fourth Appellate District.

Without issuing an order to show cause, the Court of Appeal granted a peremptory writ of mandate ordering the respondent court to vacate its order in the guardianship proceeding and to enter an order granting Department's motion for summary judgment in the adoption proceeding. The Court of Appeal also granted Department's petition for a writ of habeas corpus ordering the Real Parties in Interest to deliver Baby Girl M. to Department. We granted the Real Parties in Interest's petition for hearing.

At the outset we reject Real Parties in Interest's contention that extraordinary relief should be denied because Department comes before this court with "unclean hands" by virtue of its having induced the natural mother's refusal to consent to the adoption and her subsequent relinquish-

ment of the child to the Department. █ Although mandamus is "generally classed as a legal remedy, the question of whether it should be applied is largely controlled by equitable considerations." (*Dowell* v. *Superior Court,* 47 Cal.2d 483, 487 [304 P.2d 1009].) █ It has therefore been held that the writ should not issue in aid of one who does not come into court with clean hands (*Wallace* v. *Board of Education,* 63 Cal. App.2d 611, 617 [147 P.2d 8]), or "Where . . . the conduct of the party applying for the writ has been such as to render it inequitable to grant him relief . . ." (*Bashore* v. *Superior Court,* 152 Cal. 1, 4 [91 P. 801]). These principles are applicable to other writ proceedings. (Cf. 5 Witkin, Cal. Procedure (2d ed. 1971) Extraordinary Writs, § 122, p. 3899.) █ In an adoption or guardianship proceeding, however, the question of clean hands is largely subordinated to the court's primary concern which is to determine what is in the best interest of the child. (Civ. Code, § 227; Prob. Code, § 1406; *Adoption of Barnett,* 54 Cal.2d 370, 377 [6 Cal.Rptr. 562, 354 P.2d 18]; *Guardianship of Henwood,* 49 Cal.2d 639, 644 [320 P.2d 1].)

█ Extraordinary relief is granted in an adoption or guardianship matter in order that the child involved can be placed in a permanent and stable environment as soon as possible. Thus, where normal appellate procedures are inadequate to provide speedy and complete relief, a petition for a writ of prohibition or mandate is a proper proceeding to test the jurisdiction of the superior court to decide the matter. (*Green* v. *Superior Court,* 37 Cal.2d 307, 310 [231 P.2d 821].)

█ We must also reject respondent court's conclusion that the relinquishment signed by the natural mother is of no force and effect because it was obtained during the pendency of the guardianship proceedings. There is no authority to support this proposition. In addition, since adoption is to be preferred over guardianship (*Guardianship of Henwood, supra,* 49 Cal.2d 639, 645; *In re Santos,* 185 Cal. 127, 130 [195 P. 1055]), the activities of a licensed adoption agency towards that goal should not be discouraged. Nor can it be said that the social worker's activities in obtaining Mrs. M.'s refusal to consent to the adoption by the Real Parties in Interest and subsequent relinquishment to the agency are either improper or outside of the scope of the duties imposed upon Department by Civil Code section 226.2 (fn. 1, *ante*). That section requires the agency to determine whether the child is a proper subject for adoption, and ascertain whether the proposed home is suitable for the child, and, assuming they deem the adoption to be proper, to obtain the necessary consent of the natural parents to the proposed adoption. █ The con-

sent to adoption, which waives important statutory rights, such as the rights of natural parents to raise their children, "must be voluntary [citations] and 'knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.' " (*In re Hannie*, 3 Cal.3d 520, 526 [90 Cal.Rptr. 742, 476 P.2d 110].) In imposing the duty to accept such a consent upon the State Department of Social Welfare or the licensed county adoption agency, section 226.2 requires that the agency insure that the consent is knowingly and voluntarily given. (See tenBroek, *California's Adoption Law and Programs* (1955) 6 Hastings L.J. 261, 339-340.) With this in mind, although the social worker in the instant case may have been a little over zealous in an attempt to induce the natural mother to refuse to consent to the adoption by the Real Parties in Interest and to relinquish the child to Department,[4] we cannot say that she overstepped the bounds of her duty under section 226.2. The relinquishment obtained from Mrs. M. by Department is valid and must be considered in determining whether the adoption and guardianship matters before respondent court may proceed.

In the guardianship proceeding, Department contends that respondent court abused its discretion and acted in excess of its jurisdiction by virtue of Civil Code section 224n[5] and the rules established in *Guardianship of Henwood, supra,* 49 Cal.2d 639.

---

[4]See Bodenheimer, *The Multiplicity of Child Custody Proceedings—Problems of California Law,* 23 Stan.L.Rev. 703, 717, where she states that with regard to independent adoptions "Adoption agencies are thus given the dual role of making detached and impartial inquiries into the suitability of an adoptive home not selected by the agency, and of placing for adoption those children whose private adoption they had opposed [cf. Civ. Code, § 226c]. It is evident that the two functions are not fully compatible and that their combination may raise a serious question of conflict of interest. Although adoption agencies are supposed to be guided solely by what is most beneficial to the child entrusted to them, it is only natural that they develop the conviction at times that their decisions and choices concerning a child's future are superior to those of others."

[5]Civil Code section 224n provides: "The agency to which a child has been relinquished for adoption shall be responsible for the care of the child, and shall be entitled to the custody and control of the child at all times until a petition for adoption has been granted. Any placement for temporary care, or for adoption made by the agency, may be terminated at the discretion of the agency at any time prior to the granting of a petition for adoption. In the event of termination of any placement for temporary care or for adoption, the child shall be returned promptly to the physical custody of the agency.

"No petition may be filed to adopt a child relinquished to a licensed adoption agency or a child declared free from the custody and control of either or both of his parents and referred to a licensed adoption agency for adoptive placement, except by the prospective adoptive parents with whom the child has been placed for adoption by the adoption agency. After the petition for adoption has been filed, the agency may remove the child from the prospective adoptive parents only with the approval

The provisions governing the appointment of a guardian for the person and estate of a minor child are found in Probate Code sections 1400-1411 and 1440-1443. Sections 1405 and 1440 provide for the appointment of a general guardian for a minor child whenever "necessary or convenient." Section 1406 commands that "In appointing a general guardian of a minor, the court is to be guided by what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare." A guardian so appointed is to have care and custody of the minor child (Prob. Code, § 1500) subject to the control and regulation of the court (Prob. Code, §§ 1400, 1512). ■ These statutes require the trial court first to determine whether the appointment of a guardian is necessary or convenient and then whether the petitioner seeking appointment merits approval. (*Guardianship of Kentera,* 41 Cal.2d 639, 642 [262 P.2d 317].) Only the first of these questions is at issue herein.

Civil Code section 224n (fn. 5, *ante*), dealing with the adoption of a child who has been relinquished to a licensed adoption agency provides in part that "The agency to which a child has been relinquished for adoption shall be responsible for the care of the child, and shall be entitled to the custody and control of the child at all times until a petition for adoption has been granted." In *Guardianship of Henwood, supra,* 49 Cal.2d 639, 643, we noted the apparent conflict between the adoption and the guardianship provisions of the law and declared that they "cannot operate to control the custody of the same child at the same time. A child cannot be in the custody of a guardian subject to the control of the court and at the same time be in the custody and control of the agency." To resolve this conflict we held that the provisions for the appointment of a guardian must be "interpreted in the light of the agency adoption provisions in the case of relinquished children" and that, "Accordingly, in the absence of a showing that the agency is unfit to have the temporary custody of the child or that it is improbable that the child will be adopted, the appointment of a guardian is neither necessary nor convenient." (P. 645.) In so holding we recognized that the comprehensive plan for the adoption of relinquished children established by the Legislature would be "frustrated, if at any time the court could determine in the exercise of its independent judgment and discretion that a guardian should be appointed and custody

---

of the court, upon motion by the agency after notice to the prospective adoptive parents, supported by an affidavit or affidavits stating the grounds on which removal is sought. If an agency refuses to consent to the adoption of a child by the person or persons with whom the agency placed the child for adoption, the superior court may nevertheless decree the adoption if it finds that the refusal to consent is not in the best interest of the child."

*removed* from the agency or prospective adoptive parents selected by it." (P. 645, italics added.)

The finding of respondent court that "It is doubtful that the minor child herein, if relinquished to the San Diego County Department of Public Welfare, would be placed within a reasonable period of time by them in a home of the same character and quality as the home of the petitioner herein" is not sufficient to support a conclusion that it is improbable that the child will be adopted within the rule of *Guardianship of Henwood, supra,* 49 Cal.2d 639. The uncontradicted testimony of Department's chief of adoption services section was that although there are a certain number of children placed with Department awaiting adoption, the requests for pre-school children are so numerous that they cannot all be served. She also indicated that at the time of the hearing, Department had only two infant girls who were available for adoption. Thus, there is no basis upon which the court could conclude that it was improbable that Baby Girl M. would be placed in an adoptive home.

This does not mean, however, that the guardianship proceeding must automatically cease. *In Guardianship of Henwood, supra,* 49 Cal.2d 639, 644, we pointed out that, "In the absence of an express provision depriving the court of power to appoint a guardian of a child that has been validly relinquished for adoption, we do not believe that the adoption statutes may reasonably be interpreted as depriving such a child of the protection afforded by guardianship proceedings in a proper case. . . . We cannot assume that adoption agencies will necessarily in all cases have such wisdom and competence that they may be set apart from other custodians and given *carte blanche* in their control of relinquished children until a petition for adoption is before the court." By holding that a relinquished child cannot be removed from agency custody unless the agency is shown to be unfit or the adoption of the child is improbable, we afforded the protection of guardianship provisions to such child while giving effect to the "legislative determination that the appointment of a guardian is not necessary or convenient *while the adoption procedure is running its proper course.*" (P. 645, italics added.)

This does not preclude the possibility that there may be extraordinary factors altering the course of the normal agency procedure, which, in a case such as this, require a different inquiry in order to insure the protection of the guardianship provisions to the child. The facts in *Henwood* differ from those in the instant case in one very significant way, namely, that the physical custody of the children there involved had been relin-

quished and transferred to the county adoption agency after the death of the children's mother and before any petition for guardianship had been presented to the court. To have allowed the petition for guardianship by their maternal grandmother at that point would have interrupted the normal course of the agency placement procedure and caused an additional relocation of the children thereby complicating the whole process and adding to the uncertainty of their future.

In the instant case, the child has been in the home of the Real Parties in Interest from the time she was 3 days old until the hearing, a period of almost one year. Awarding custody to the agency under these circumstances would mean that the child would be removed from the only home she has known, be placed either in a foster home or in the facilities of the adoption agency, then be moved again to be placed with prospective adoptive parents. The blind application of the doctrine set forth in *Henwood* to a case such as this would introduce the very element of uncertainty and instability which was sought to be avoided by the holding in *Henwood*.

In determining whether guardianship is necessary or convenient, the court is to be guided solely by "what appears to be for the best interest of the child in respect to its temporal and mental and moral welfare." (Prob. Code, § 1406.) The application of this paramount consideration to the facts of the instant case requires the earliest possible determination of the pending adoption proceedings. Should the Real Parties in Interest prevail in such proceedings no disturbance of the child's present home environment would occur. Should the Department's objections prevail then the guardianship order heretofore made should be revoked (Prob. Code, § 1580, subd. (8)) and the physical custody of the child be transferred forthwith to Department.

In at least two of the state's superior courts when petitions for guardianship and adoption of the same child are pending in separate departments of the same court, the proceedings upon the two petitions are consolidated for hearing before one department. (See Bodenheimer, *supra,* 23 Stan. L.Rev. 702, 716, fn. 1, and accompanying text.) In the instant case in order to reach a decision as expeditiously as possible, the best interest of the child would have been served by such a consolidation for hearing. However, even though the order granting the Real Parties in Interest's petition was granted based in part upon a misconception of the law as indicated in the court's findings, there would appear to be no point in vacating it at this time under the circumstances of this case. The respondent court retains jurisdiction and can terminate the guardianship should the

Real Parties in Interest's efforts at adoption fail. The two proceedings should be consolidated forthwith, however, for further hearing so that the appropriate orders may be made in each proceeding upon the outcome of the Real Parties in Interest's petition for adoption.

One further issue remains. Department contends in the adoption matter that respondent court is barred from considering the Real Parties in Interest's petition by virtue of the provisions of Civil Code section 224n (fn. 5, *ante*) and that the court lacks jurisdiction to grant the petition because the natural mother has refused her consent.

The second paragraph of Civil Code section 224n, enacted following our decision in *Adoption of McDonald,* 43 Cal.2d 447 [274 P.2d 860] (Stats. 1955, ch. 949), provides in part that "No petition *may be filed* to adopt a child relinquished to a licensed adoption agency or a child declared free from the custody and control of either or both of his parents and referred to a licensed adoption agency for adoptive placement, except by the prospective adoptive parents with whom the child has been placed for adoption by the adoption agency." (Italics added.) The same paragraph also provides that "If an agency refuses to consent to the adoption of a child by the person or persons with whom the agency placed the child for adoption, the superior court may nevertheless decree the adoption if it finds that the refusal to consent is not in the best interest of the child." In *Adoption of McDonald, supra,* we held that no requirement of agency consent to an adoption of a child relinquished to it can be reasonably implied from the adoption statutes and that "the court is expressly empowered thereunder, if it deems the welfare of the child will be promoted by the adoption, to grant the petition without such consent." (P. 452.) By rejecting a proposal which would have required the superior court to find that the agency's refusal to consent to the adoption was "arbitrary and capricious" before it could grant the petition (1 Assem. J. (Reg. Ses. 1955) p. 1982), and adopting section 224n as it now reads, the Legislature codified the rule laid down in *McDonald* and affirmed the principle that the court, in making its decision whether to grant or deny the adoption petition, is to be guided by what appears to be for the best interest of the child.

█ By its language, section 224n does not bar respondent court from considering the Real Parties in Interest's petition in light of the best interest of the child. The language "No petition may be filed" indicates that once a child is relinquished to a licensed adoption agency for adoption the superior court may not accept the filing of a petition for its adoption by

other than the prospective adoptive parents selected by the agency. Section 224n does not, however, forbid the filing of a petition prior to the relinquishment of a child to such an agency. Thus, there is nothing in the statute to have prevented the clerk of respondent court from accepting the petition filed by the Real Parties in Interest. Section 224n does not provide that the court may not consider such a petition once it has been properly filed and is pending before the relinquishment of the child to the Department. The Department cannot deprive the court of jurisdiction to consider the pending adoption petition simply by the device of obtaining a relinquishment from the natural mother.

 In a case where the Department of Social Welfare recommends against the adoption or refuses its consent thereto, the court is charged with the responsibility to determine whether or not the welfare of the child would be promoted by granting the petition. (Civ. Code, § § 224n, 226.4; *Adoption of McDonald, supra,* 43 Cal.2d 447, 452.) In *Adoption of Barnett, supra,* 54 Cal.2d 370, 377, specifically disapproving the rule that the adoption statutes are to be strictly construed in favor of the natural parents, we held that the statute is to be given a liberal construction " 'with a view to effect its objects and to promote justice.' " Quoting from *In re Santos, supra,* 185 Cal. 127, 130, we noted that the main purpose of the adoption statutes is "the promotion of the welfare of children, bereft of the benefits of the home and care of their real parents, by the legal recognition and regulation of the consummation of the closest conceivable counterpart of the relationship of parent and child." (*Adoption of Barnett, supra.*) Our interpretation of section 224n as allowing the court to consider the Real Parties in Interest's petition is consistent with this view.

The natural mother's belated refusal to formally consent to the adoption by the Real Parties in Interest does not bar the granting of their petition. The rationale for requiring the consent of the natural parents to an adoption is set forth in *Matter of Cozza,* 163 Cal. 514, 523 [126 P. 161], as follows: "Nor is discretion committed under adoption proceedings to the superior court to make an order therefor, if it deems that the interest of the child will be promoted thereby, regardless of the consent or wishes of the parent, or the existence of the prescribed conditions dispensing with such consent. Investing the court with such authority would be to make it the possible means of forcibly taking a child from its parent and transferring it to another person, against the protest and opposition of the parent, merely because the court deemed it advisable and for the benefit of the child that this should be done."

This view was reaffirmed in *Adoption of Barnett, supra,* 54 Cal.2d 370, 377, where we agreed that the consent of the natural parents, except in those situations excepted by statute, is a jurisdictional prerequisite to an adoption with the caveat that such consent requirements are no longer to be construed strictly in favor of the rights of the natural parent. ▪ As we have pointed out, such requirements are to be liberally construed in order to effect the object of the adoption statutes in promoting the " 'welfare of children, bereft of the benefits of the home and care of their real parents. . . .' " (*Adoption of Barnett, supra,* p. 377.)

Civil Code section 224 provides in pertinent part that an illegitimate child cannot be adopted "without the consent of its mother if living; except that the consent of a father or mother is not necessary in the following cases: . . . [Par.] 3. Where such father or mother of any child has relinquished such child for adoption as provided in Section 224m; or where such father or mother has relinquished such child for adoption to a licensed or authorized child-placing agency in another jurisdiction pursuant to the law of that jurisdiction." This section is consistent with the principle set forth in *Matter of Cozza, supra,* 163 Cal. 514, 523, in that once the natural parent has voluntarily surrendered his or her rights to the custody and control of the child, there is no longer any need to be concerned with the possibility of forcefully removing a child from its natural parents against their wishes. ▪ Therefore, once a child has been relinquished, since the consent of the agency to which it has been relinquished is not required (*Adoption of McDonald, supra,* 43 Cal.2d 447), the only determination for the court to make upon a petition for adoption properly filed before it, is whether or not granting the petition will promote the welfare, and is in the best interest, of the child.

In making its determination, respondent court is to consider the type of home offered by the Real Parties in Interest and the effect that their ages may have upon the future welfare of Baby Girl M. The age factor is to be weighed against the possible harm to the child's welfare which could result from removing her from the only home she has known and in which she has spent the first two years of her life. The court must also consider the child's chances for better development with a younger couple who might be selected by Department. The court is to accord due weight to Department's expertise in these matters, but this does not mean that Department's recommendation is binding.

Since the trial court's finding that the natural mother had abandoned the child at the time of its birth is supported by Mrs. M.'s testimony that

she has had no desire to take the child back and raise it herself (Prob. Code, § 1409; *Guardianship of Rutherford,* 188 Cal.App.2d 202, 206 [10 Cal.Rptr. 270, 98 A.L.R.2d 410]; *Guardianship of Snowball,* 156 Cal. 240, 243 [104 P. 444]), the child's custody is to remain with the Real Parties in Interest until respondent court has entered a decision upon the petition for adoption. (Civ. Code, § 4600.)

The guardianship and adoption matters are to be consolidated in respondent court for the hearing of further proceedings in conformity with the views expressed herein and to proceed with the hearing of the Real Parties in Interest's petition for adoption. The alternative writ of prohibition is discharged, Department's petition for a peremptory writ is denied. The petition for writ of habeas corpus is denied.

Wright, C. J., McComb, J., Peters, J., Tobriner, J., Mosk, J., and Sullivan, J., concurred.