524 P.2d 316 (1974)
In re The PEOPLE of the State of Colorado, Petitioner-Appellee,
In the Interest of C. P. and D. P., Children, And Concerning F. P. and L. P., Respondents, and
H. L. O., Appellant.
No. 73-424.
Colorado Court of Appeals, Div. I.
May 7, 1974.
As Modified on Denial of Rehearing May 29, 1974.
Certiorari Denied July 29, 1974.
*317 S. Morris Lubow, Kent C. Schroeder, Commerce City, for petitioner-appellee.
Ronald M. Andersen, Denver, guardian ad litem for children.
Maley & Schiff, P.C., Denver, for appellant.
Selected for Official Publication.
PIERCE, Judge.
Appellant, hereinafter called "the grandmother," appeals from the denial of her "petition to set aside" an order of the District Court of Adams County, granting temporary custody of her grandchildren to the Adams County Welfare Department *318 for the purpose of placing the children for adoption. We reverse.
The grandmother alleges that she was appointed guardian of the children by the Juvenile Court of the City and County of Denver in December of 1971, and that her appointment has never been terminated. The record reflects that in May of 1972, that same court entered an order adjudicating the children to be dependent and neglected. The court further ordered that jurisdiction of the case be transferred to the District Court for Adams County and that custody be retained by the children's parents, to whom the grandmother had surrendered custody, under the supervision of the Adams County Welfare Department. On August 15, 1972, the grandmother filed a petition for custody of the children. A hearing was held the same day before a referee to review the arrangements made for the children. At the conclusion of the hearing, custody of the children was removed from the parents and temporarily granted to the Adams County Welfare Department. No evidence was taken on the grandmother's petition for custody, and it was held in abeyance pending a proposed three-month investigation by the Welfare Department of the fitness of the grandmother and her husband to take custody.
On November 14, 1972, a further hearing was held at which time the Welfare Department requested the termination of parental rights. The grandmother was present at this hearing and, following the termination of parental rights, requested that the referee rule on her petition for custody. The ruling was again postponed on the grounds that the investigation of the grandparents had not been completed, or was not available for presentation to the referee on that date. An order was entered by the court adopting the findings of the referee terminating parental rights and vesting custody of the children for placement and adoption with the Welfare Department.[1] No findings were entered, either by the referee or by the court, with respect to the grandmother's petition for custody. Thereafter, the grandmother attempted to obtain custody of the children by contacting both the court and the Welfare Department, without success.
Finally, in July of 1973, she filed the "petition to set aside"[2] the order of November 14, 1972, and to grant her custody of the children. The petition, among other things, alleged that the original proceedings in the Denver Juvenile Court as to dependency and neglect, had been held without notice to her, as guardian; that further proceedings before the Adams County District Court had likewise been held without notice to her; that the November 14th order was silent as to her request for custody; and that she had been denied a full hearing on the custody request.
Hearing was held on this petition in September of 1973, and an order was entered on October 2nd by the court, declaring that the grandmother had no legal standing to contest the prior order and that it would be contrary to the best interests of the children to grant custody to her.
The court also stated from the bench:
"I have talked to Mrs. O. a number of times and asked the Welfare Department to review this application for custody, so this doesn't catch me unaware. I am fully cognizant of the interest, concern and desires of Mr. and Mrs. O.especially Mrs. O. I haven't talked much with Mr. O., but Mrs. O. has been very zealous in pursuing this and the reason I haven't made a determination on this is because custody of the children was given to the Department of Welfare with the responsibility of determining what placement would be in the children's best interest and I think it's very difficult for any social *319 service agency to operate if they're going to be second-guessed by a court. I have to rely on their recommendation and that is what I have been doing. I have tried to be consistent in that and it isn't due to any lack of information about Mr. and Mrs. O." (Emphasis added.)

I
On appeal, the grandmother alleges that she was denied an opportunity to be heard with respect to her request for temporary custody of these children. In response, the Welfare Department and the guardian ad litem appointed by the Adams County District Court first argue that she has no standing to question the propriety of the court's order. We rule that while she has no preferred status or "right" to custody, the grandmother had standing to challenge the court's order and that she was entitled to participate in the proceeding as an "interested party."
While the Children's Code does not expressly define those persons who may become "parties" to proceedings such as those before us, it does contemplate the participation of interested third parties. See 1967 Perm.Supp., C.R.S.1963, 22-3-9; 1967 Perm.Supp., C.R.S.1963, 22-1-8(2) & (3); 1967 Perm.Supp., C.R.S.1963, 22-1-11(1)(b). The question now becomes, does the grandmother qualify as an "interested party." Again, the Code does not supply a definition of the term "interested party."
The Children's Code provides, as an option for disposition, that the trial court may place the child "in the legal custody of a relative . . . ." 1967 Perm.Supp., C.R.S.1963, 22-3-11(1)(c). If this alternative is to serve as a viable option under the Code, such persons must be permitted to participate in the dispositional proceedings where they make timely application for custody of the child prior to the dispositional hearing. We rule that since the court may give custody following an adjudication of dependency and neglect to a relative, a relative is entitled to intervene at the dispositional stage upon application made to the court prior to the dispositional hearing. The court, however, need not give notice, nor consider the rights of, relatives who have not made timely application. By filing the "petition for custody" at the hearing on August 15, 1972, the grandmother properly entered these proceedings as an "interested party."
Appellees argue that the grandmother was estopped to intervene at this point because she had not entered the Adams County proceeding. However, custody had been retained by the parents in hopes that they would demonstrate their ability to care for these children properly, and therefore, the grandmother had no reason to request custody in any prior proceeding. Furthermore, her participation would not have been proper in the adjudication proceeding (except in her formal capacity as guardian.) Her interest in the custody of the children did not arise until after the adjudication of dependency and the decision to remove custody from the natural parents.

II
The Welfare Department and the guardian ad litem contend that the grandmother has sought to elevate herself to the position of a parent, or legal custodian, which would entitle her to be joined as a "respondent" in the action. Such joinder would be inappropriate since these proceedings do not purport to affect any existing legal relationship between her and the children. This, however, does not preclude her from becoming a "party" to these proceedings as a petitioner seeking custody.
Having alleged her relationship and her interest in taking custody of these children, she asserted her rights as an interested party under the Children's Code and was entitled to participate in the proceedings. Her right of participation included the right to be informed by the court of her right of cross-examination under 1967 Perm.Supp., C.R.S.1963, 22-1-8(2) & (3); to put on evidence in her own behalf in asserting *320 her fitness for custody, and of course, to receive notice of any subsequent hearings. See C. B. v. People in re J. T. B., 30 Colo.App. 269, 493 P.2d 691. Cf. In re Henwood's Guardianship, 49 Cal.2d 639, 320 P.2d 1.
While the court stated its purported awareness of her "interest, concern and desires" with regard to the custody of these children, there is absolutely nothing in the record relating to her fitness for custody. Thus, the court's conclusion that "it would be contrary to the best interests of the children to . . . place them with the [grandmother]" cannot stand. H. B. Bolas Enterprises, Inc. v. Zarlengo, 156 Colo. 530, 400 P.2d 447.
The grandmother sought to introduce evidence on this issue at the hearing on August 15, 1972, and again on November 14, 1972. She was told that an investigation would be made after which she would be considered for custody. Yet, on the record before us, at no time was the report of any investigation of her fitness submitted to the court in formal proceedings; nor was she given an opportunity to cross-examine the author of any such report. Furthermore, there is nothing in the record to support a conclusion, as was suggested in a letter from the trial judge to her counsel, that granting custody to the grandmother would be a sham by which the natural parents might regain custody.
The trial court may ultimately delegate the responsibility of placing the children for adoption to the Welfare Department. C.R.S.1963, 22-3-11(1)(d). See Denver v. Juvenile Court, Colo., 511 P.2d 898. Moreover, we would agree with the appellees that under most circumstances, once the final selection of disposition has been made by the court and custody has been placed in the Welfare Department for adoption purposes, it is not wise to interfere with the adoption process, even though the court has the power to do so. See San Diego County Department of Public Welfare v. Superior Court, 7 Cal.3d 1, 101 Cal.Rptr. 541, 496 P.2d 453; In re Henwood's Guardianship, supra. However, the court is not free to delegate its initial responsibility of electing between the alternative dispositions provided by the Children's Code. (See 1967 Perm.Supp., C.R.S.1963, 22-3-11.) The statements of the trial court in this case make it clear that it was relying solely on the information provided to it by the Welfare Department and that no attempt was made to explore the alternative of granting custody to the grandmother.

III
The appellees also argue that the grandmother is estopped to assert any rights that she might have had as the legally-appointed guardian of the children. Because we have ruled that she was entitled to participate as a party regardless of any legal rights flowing from the original guardianship order, we need not address this contention.
The order of the court is reversed and the cause is remanded for proceedings to determine the issues raised by the petition for custody.
SMITH and RULAND, JJ., concur.
NOTES
[1] Neither the parents nor the grandmother challenge the adjudication of dependency or the termination of parental rights. The parents have not been involved in any proceedings following this order.
[2] This petition was, in effect, a motion under C.R.C.P. 60(b)(5).