Filed 8/27/13  In re A.W. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| In re A.W. et al., Persons Coming Under the Juvenile Court Law. | |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> C.W., <br><br> Defendant and Appellant. | C072502 <br><br> (Super. Ct. Nos. 10JVSQ2733302, 10JVSQ2733402, 10JVSQ2733502) |

C.W., mother of the minors, appeals from orders of the juvenile court terminating her parental rights.  (Welf. & Inst. Code, §§ 366.26, 395.)[1]  Appellant contends the record fails to show that appellant was informed and aware of her rights at the section 366.26 hearing and her submission on the issues was not, therefore, voluntary.  Appellant further

---

[1]    Undesignated statutory references are to the Welfare and Institutions Code.

1

argues, and respondent concedes that a limited reversal for compliance with the Indian Child Welfare Act (ICWA) (25 U.S.C. 1901 et seq.) notice provisions is required. While finding no merit in appellant's first contention, we accept respondent's concession as to the second contention and reverse and remand the orders for compliance with the notice provisions of ICWA.

FACTS

In March 2008, the Shasta County Health and Human Services Agency (Agency) filed a petition to remove A.W., age seven; D.S., age three; and I.S., age 13 months from parental custody due to appellant's drug issues. Mother successfully reunified and the first dependency was terminated in October 2009.

The Agency filed a new petition in September 2010 to remove the minors from mother after D.S., then five years old, took a bag of methamphetamine to school. The court ordered the minors detained. At the detention hearing, mother signed a notice of rights and responsibilities which stated, in pertinent part: "The California Welfare and Institutions Code requires that the Court provide you with the following information concerning your rights and responsibilities during *juvenile dependency court proceedings*: [¶] 1. Right to an Attorney: You have the right to have an attorney represent you at all hearings . . . The court will appoint an attorney for you if you are unable to afford one. [¶] 2. Hearing Rights You are entitled to the following: [¶] A. To be present at all hearings [¶] . . . [¶] D. You have a limited right to assert the privilege against self-incrimination. . . . [¶] E. You have the right to confront and cross-examine the persons who prepared reports or documents submitted to the court and the witnesses called to testify at the hearing. [¶] F. You have the right to have the court compel witnesses to attend who may be helpful to you. [¶] G. You have the right to present evidence to the court. [¶] H. You also have the right to have your legal rights explained to you by the court. If you do not understand any of these rights, tell your lawyer or the judge when your case is called." (Italics added.) The notice of rights and responsibilities

2

also informed mother that if she failed to reunify, the court could order the minors into long-term foster care or set a hearing to determine whether guardianship, adoption, or long-term foster care was the appropriate permanent plan.

At the jurisdiction/disposition hearing in March 2011, the court denied services to mother, set a section 366.26 hearing as to A.W., and ordered services for the father of D.S. and I.S. In August 2011, mother filed a petition for modification seeking services and an increase in visitation. The court set a hearing on the petition. The court intended to deal with the petition for modification first then with the other pending issues of review hearings for D.S. and I.S. and selection of a permanent plan for A.W. which would trail.

The September 2011 status review report for I.S. and D.S. recommended the court terminate father's services and set a section 366.26 hearing.

A bonding assessment in August 2011 concluded the minors would benefit from continuing contact with mother if she remained sober and visited consistently. A second assessment in October 2011 concluded that if mother remained clean and sober and worked on her personality issues, termination of parental rights would be detrimental to the minors.

The November 2011 report for the section 366.26 hearing for A.W., now age 10, recommended termination of parental rights and a permanent plan of adoption. The report stated A.W. was highly adoptable.

The hearing on the petition for modification commenced in March 2012 and included 10 days of testimony over the next three months. The court issued its ruling denying the petition for modification as to all three minors, adopting the recommended findings and orders terminating services as to the father of D.S. and I.S., setting a section 366.26 hearing as to them, and deferring ruling on A.W.'s section 366.26 hearing. As a part of the orders, the court advised mother of the time and place of the section 366.26

3

hearing, the right to counsel, and the nature of the proceedings, i.e. that the purpose of the hearing was to select a permanent plan for the minors.

The report for the section 366.26 hearing as to D.S. and I.S. recommended termination of parental rights and adoption by a paternal aunt and uncle. The two minors and A.W. were moved to this placement in September 2012. An addendum report regarding A.W. continued to recommend termination of parental rights and a permanent plan of adoption. A.W. told the social worker he was in favor of adoption by his current caretakers.

At the section 366.26 hearing for the three minors, the court declined to order a sibling bond assessment as unnecessary. In response to mother's counsel's concerns, the court observed that the prospective adoptive parents could allow contact between the minors and mother if they chose to do so. Counsel for mother then informed the court that mother was prepared to go forward with evidence, but had made a decision that she wanted the matter concluded and wanted to address the court then submit the matter. The court permitted mother to make a statement.

Mother made the following statement: "I wouldn't be here today if it wasn't for CPS coercing [D.S.] at school, and now they are again manipulating my child's mind. This is enough. And it's too much to put on a little boy. CPS is doing more damage to my kids than I ever did, and I'm shocked at the unethical way that CPS is handling my case, the case of my children.

"Their accusation of any offense that I would physically harm my children is one hundred percent not true. I never would have ever or could have ever harmed any of them, or any child for that matter.

"In addition to harming me by these tricks from CPS, it's also harming my children, and using the fragile psyche of my seven-year-old child, [D.S.], and [A.S.] to complete their task.

4

"I want my kids to be happy. I want my kids placed with their uncles. They can adopt them. I just want this to end. I don't want my kids -- my kids are old enough now that they know me. They know that I love them. They will come home when they are older. They don't need to be messed with in their minds anymore. They don't need any more of this. It just needs to end.

"I would give up my rights if they would just be with their family. I'm fine with them being that way. I love my children and I always will. That's it."

The court expressed the hope that the minors would be able to return to a healthy relationship with mother, but had to proceed to permanency. The court adopted the recommended findings and orders to terminate parental rights with a permanent plan of adoption as to all three minors and found that ICWA did not apply.

## DISCUSSION

### I

### *Termination Of Parental Rights*

Mother argues that the record does not show her submission, plea, or waiver at the section 366.26 hearing was voluntary and informed with an awareness of what she was giving up and was; therefore, invalid as a waiver of her parental rights. Mother contends she was not informed of her right to a hearing on termination and the defenses thereto.

Mother misapprehends the state of the record. At the outset of the case, she was informed of her right to counsel, to have hearings during the course of the dependency at which she could contest the social worker's recommendations, and to present evidence on her own behalf. She was also informed that if she failed to reunify, the court could choose a permanent plan after a hearing and the plan could be adoption. Mother was represented by counsel at all stages of the proceeding and was assured conflict-free counsel by appointment of new counsel prior to the hearing on her petition for modification and the later section 366.26 hearings. She was also advised of the nature of

5

the section 366.26 hearing and the possibility that her parental rights would be terminated.

Mother recognizes that, while there is a requirement of advisement of rights and procedures to insure an informed plea or submission prior to a jurisdiction hearing (Cal. Rules of Court, rule 5.682), a requirement for a written waiver of services (§ 361.5, subd. (b)(14)), and a requirement for a written relinquishment of a child for adoption (Fam. Code, § 8700, subd. (a)), there is no requirement that the court advise a parent of her rights prior to the section 366.26 hearing. The only requirement is notice of the nature of the proceedings and other particulars as set forth in section 294, subd. (e). This notice was provided. Further, the social worker's reports for the hearing made it clear that the Agency recommended termination of parental rights with a permanent plan of adoption.

Mother's counsel had secured two assessments which supported application of the beneficial relationship exception to termination of parental rights. (§ 366.26, subd. (c)(1)(B)(i).) Counsel informed the court mother was ready to go forward with the evidence but had made a decision not to do so. Clearly, mother had discussed the strategy of the case with counsel and had a well-articulated reason for choosing not to further litigate the issues. *Mother chose to forego the contested hearing on the selection of a permanent plan, not to relinquish her parental rights*.[2] Mother's statement to the court made it clear that she continued to be concerned about what she saw as manipulation of her children from the outset of the proceedings. She had come to terms with the reality of the Agency's recommendation and the knowledge that the minors

---

[2]    Mother's discussion of waiver and voluntariness relies on several cases which are distinguishable on their facts. Several involve relinquishment of, or consent to adopt, a child to a department or agency and one deals with a narcotics addiction commitment. (*Tyler v. Children's Home Society* (1994) 29 Cal.App.4th 511 [relinquishment]; *San Diego County Dept. of Public Welfare v. Superior Court* (1972) 7 Cal.3d 1 [relinquishment]; *Adoption of Barnett* (1960) 54 Cal.2d 370 [consent]; *In re Walker* (1969) 71 Cal.2d 54 [commitment].)

could return to her when they came of age. She had a right to say "enough" and decline to engage in further litigation. The record demonstrates she was well advised of her rights and fully represented by competent counsel. In the circumstances of this case, the record demonstrates mother's choice to forego a contested trial and the possibility of establishing an exception to termination of her parental rights, was fully voluntary.

## II

### Indian Child Welfare Act

Mother argues, and the Agency concedes, that a conditional reversal is required to comply with the ICWA notice requirements. Mother also argues additional inquiry is required.

ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for, and permitting tribal participation in, dependency actions. (25 U.S.C. §§ 1901, 1902, 1903(1), 1911(c), 1912.) The juvenile court and the Agency have an affirmative duty to inquire at the outset of the proceedings whether a child who is subject to the proceedings is, or may be, an Indian child. (Cal. Rules of Court, rule 5.481(a).) The duty of inquiry is continuing and may include interviewing extended family members to gather information. (§ 224.3, subds. (a) & (c).)

Here, the initial inquiry was made and mother denied any Indian heritage. Mother subsequently identified possible heritage in the Iroquois, Blackfeet, and Cherokee tribes. Mother told the social worker the maternal grandmother was adopted and mother had no information about the maternal grandmother's biological parents.[3] Mother said she had little information about the maternal grandfather and authorized the social worker to

---

[3] Mother's claimed Iroquois heritage through the maternal grandmother. There is no indication in the record how that information arose if she had no knowledge of the maternal grandmother's birth parents or heritage.

7

speak to his mother, the maternal great-grandmother. Through this contact, the social worker developed further information about the maternal grandfather's heritage and sent notice to the relevant tribes. Mother provided additional details to the social worker who sent a second notice to the tribes. None of the tribes responded that the children were members or eligible for membership.

Mother asserts that the Agency failed to ask the maternal grandmother and the maternal grandfather about their Indian ancestry although the Agency had the ability to contact both.

The Agency apparently did not contact the maternal grandmother based on mother's information that she was adopted and mother had no information about the maternal grandmother's biological parents or birth name. The Agency has no duty to attempt to open a forbearer's adoption records to seek information about a child's Indian ancestry. (*In re C.Y.* (2012) 208 Cal.App.4th 34, 42.) However, an initial inquiry of the maternal grandmother, for whom the agency has contact data, may be made to ascertain whether there is any known Indian heritage.

Presumably the Agency did not contact the maternal grandfather because the social worker was able to get relevant information from his mother. Assuming the Agency has contact data for the maternal grandfather, the Agency should be able to ascertain his correct birth date and address from him. However, the Agency has no duty to "cast about" to find him. (*In re Levi U.* (2000) 78 Cal.App.4th 191, 199.)

The inquiry coupled with known information on both the grandparents may require additional notice to the tribes. Reversal with a limited remand is necessary to permit compliance with the notice provisions of the ICWA.

8

DISPOSITION

The orders terminating parental rights are reversed and the matter is remanded for the limited purpose of complying with the notice provisions of the ICWA. If, after further inquiry and notice by the Agency, the juvenile court determines that the tribes were properly noticed and there either was no response or the tribes determined that the minors are not Indian children, the orders shall be reinstated. However, if a tribe determines the minor is an Indian child as defined by the ICWA and the court determines the ICWA applies to this case, the juvenile court is ordered to conduct a new section 366.26 hearing in conformance with all provisions of the ICWA.


                                                                ROBIE         , J.



We concur:



        RAYE        , P. J.



        MURRAY        , J.



9