The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
November 15, 2018

## 2018COA165

**No. 18CA0313, People in the Interest of C.N. — Juvenile Court
— Dependency and Neglect; Family Law — Grandparents or
Great-Grandparents; Constitutional Law — Fourteenth
Amendment — Due Process**

A division of the court of appeals considers whether, under the

circumstances presented here, a grandparent has a constitutionally

protected liberty interest in the society or custody of a child.  The

division holds that there is no such constitutionally protected

liberty interest where the grandparent (1) enjoys limited visitation

rights derived from statute; and (2) only has a biological

relationship with the child but no existing custodial relationship

with the child.  This is so especially where, as here, grandparent

was aware that the child was removed from her mother's care and

mother's parental rights were later terminated.

COLORADO COURT OF APPEALS                                    **2018COA165**

Court of Appeals No. 18CA0313
Jefferson County District Court No. 15JV572
Honorable Ann Gail Meinster, Judge

The People of the State of Colorado,

Petitioner-Appellee,

In the Interest of C.N., a Child,

and Concerning A.N.,

Respondent-Appellant,

and Concerning A.F. & S.F.,

Intervenors-Appellees.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE FOX
Taubman and Terry, JJ., concur

Announced November 15, 2018

Ellen G. Wakeman, County Attorney, Sarah Oviatt, Assistant County Attorney, Golden, Colorado, for Petitioner-Appellee

Law Office of Kurt A. Metsger, Samantha Metsger, Kurt Metsger, Denver, Colorado, for C.N.

The Harris Law Firm P.C., Katherine O. Ellis, Denver, Colorado, for Respondent-Appellant

Grob & Eirich LLC, Timothy J. Eirich, Lakewood, Colorado, for Intervenors-Appellees

¶ 1    In this dependency and neglect proceeding, A.N. (grandmother) appeals the juvenile court's order placing C.N. (child) permanently with her foster parents.  We affirm.

## I.  Background

¶ 2    In June 2015, the Jefferson County Division of Children, Youth, and Families filed a petition in dependency and neglect due to concerns about mother's mental health.  The newborn child was placed in foster care, and mother's parental rights were terminated a year later.  A division of this court affirmed the judgment and a mandate was issued on February 28, 2017.  *People in Interest of C.N.*, (Colo. App. No. 16CA1206, Jan. 19, 2017) (not published pursuant to C.A.R. 35(e)).

¶ 3    In February 2017 — a year and a half after the child was born and eight months after mother's parental rights were terminated — grandmother filed a motion to intervene in the case.  Shortly thereafter she filed a motion for the child to be placed with her.  The juvenile court held a contested hearing on the motion and found that it was in the child's best interest to permanently remain with the foster parents.  The court also terminated grandmother's visitation with the child.  On the day of the contested hearing, the

grandmother filed a petition for kinship adoption of the child, but the court refused to accept its filing in the dependency and neglect case.

¶ 4    The foster parents adopted the child in January 2018.

## II.  Real Party in Interest and Standing

¶ 5    Grandmother contends on appeal that mother did not receive reasonable accommodations to address her mental health issues, such as the appointment of a guardian ad litem (GAL), and that mother needed assistance in notifying relatives of the termination proceeding.  She also argues that the child had a fundamental right of association with grandmother.  Grandmother asserts that, as an intervenor in the case, she is a real party in interest regarding these issues.

¶ 6    C.R.C.P. 17(1) requires that every action be prosecuted by the real party in interest.  The real party in interest "is that party who, by virtue of substantive law, has the right to invoke the aid of the court in order to vindicate the legal interest in question."  *Summers v. Perkins*, 81 P.3d 1141, 1142 (Colo. App. 2003).

¶ 7    We construe grandmother's argument to be that she has standing to raise issues concerning mother and the child.  Standing

2

is a jurisdictional prerequisite that may be raised at any stage of the proceeding. *Hickenlooper v. Freedom from Religion Found., Inc.*, 2014 CO 77, ¶ 7. "Because 'standing involves a consideration of whether a plaintiff has asserted a legal basis on which a claim for relief can be predicated,' the question of standing must be determined prior to a decision on the merits[.]" *Id.* (quoting *Bd. of Cty. Comm'rs v. Bowen/Edwards Assocs., Inc.*, 830 P.2d 1045, 1052 (Colo. 1992)).

¶ 8    To have standing, a plaintiff must have (1) suffered an injury in fact (2) to a legally protected interest. *C.W.B. v. A.S.*, 2018 CO 8, ¶ 18. The legally protected interest requirement recognizes that "parties actually protected by a statute or constitutional provision are generally best situated to vindicate their own rights." *City of Greenwood Village v. Petitioners for Proposed City of Centennial*, 3 P.3d 427, 437 (Colo. 2000).

¶ 9    Whether a party has standing to proceed is a question of law we review de novo. *Hickenlooper*, ¶ 7.

¶ 10    Grandmother does not cite to substantive law granting her standing to assert the rights of mother and the child. Indeed, our courts have consistently held that in dependency and neglect

3

appeals, parents and intervenors lack standing to assert the rights of other parties. *See People in Interest of J.M.B.*, 60 P.3d 790, 792 (Colo. App. 2002) (father lacked standing to challenge the appropriateness of mother's treatment plan); *People in Interest of E.S.*, 49 P.3d 1221, 1223 (Colo. App. 2002) (mother lacked standing to raise issues regarding the stepfather's party status); *see also People in Interest of J.A.S.*, 160 P.3d 257, 261 (Colo. App. 2007) (one parent does not have standing to raise issues regarding the propriety of termination of the other parent's rights).

¶ 11    Grandmother also lacks standing to assert the child's rights. The Children's Code statutorily obligates the child's GAL to advocate for the child's best interests and expressly authorizes the GAL to participate at all steps of the legal proceeding, including on appeal. § 19-3-203, C.R.S. 2018; *C.W.B.*, ¶ 24. Absent indication that the GAL is unable or unwilling to advocate for the child's best interests, courts will not confer standing to assert the rights of the child to intervening parties. *C.W.B.*, ¶ 36.

¶ 12    Accordingly, we conclude that grandmother lacks standing to raise the issues on appeal pertaining to mother and the child.

### III.  Subject Matter Jurisdiction

¶ 13    Grandmother argues that the juvenile court lacked subject matter jurisdiction to hear the dependency and neglect case because the child never resided in nor was present in Jefferson County.  We disagree.

¶ 14    As noted, a party only has standing to challenge an issue, including subject matter jurisdiction, if he or she suffered an injury in fact to a legally protected interest.  We need not address whether grandmother has standing to raise subject matter jurisdiction because the result is the same.

¶ 15    Subject matter jurisdiction concerns a court's authority to hear and rule on a certain class of cases and is conferred by the state constitution and statutes.  *See People in Interest of K.W.*, 2012 COA 151, ¶ 10.  A challenge to a court's subject matter jurisdiction is not waivable and may be raised at any time.  *Herr v. People*, 198 P.3d 108, 111 (Colo. 2008).  If a court does not have subject matter jurisdiction, it is deprived of any authority to act from the outset of the case.  *People v. Martinez*, 2015 COA 33, ¶ 30.

¶ 16    In section 19-1-104(1)(b), C.R.S. 2018, the General Assembly explicitly granted the juvenile divisions of district courts outside the City and County of Denver and the Denver Juvenile Court

"exclusive original jurisdiction in proceedings . . . [c]oncerning any child who is neglected or dependent, as set forth in section 19-3-102[, C.R.S. 2018]." In addition, because of "the state's strong interest in providing for the welfare of children within its borders, the presence of an allegedly dependent or neglected child within the state is considered to be a sufficient jurisdictional basis to permit a court to adjudicate the dependency status of the child in that state." *E.P. v. Dist. Court*, 696 P.2d 254, 259 (Colo. 1985).

¶ 17    Venue, on the other hand, refers to "the locality where an action may be properly brought." *State v. Borquez*, 751 P.2d 639, 641 (Colo. 1988). Section 19-3-201(1)(a), C.R.S. 2018, states that, except in cases reinstating parental rights, "all proceedings brought under this article shall be commenced in the county in which the child resides or is present." *See also People in Interest of T.L.D.*, 809 P.2d 1120, 1122 (Colo. App. 1991).

¶ 18    Because the child was allegedly dependent or neglected, the juvenile court had subject matter jurisdiction to hear the case. The question then turns to whether venue was proper. We conclude that it was. When mother gave birth to the child and the hospital asked where she lived, she provided an address in Arvada,

Colorado, and that address was within Jefferson County. When mother's counsel requested that the case be transferred out of state, counsel conceded that mother "was staying, very briefly, in a place in Jefferson County when she gave birth, but the baby was born in Denver . . . ." And, because a child who is placed in the legal custody of a department is deemed to reside in the county where the child's legal parent or guardian resides or is located (and mother was residing, albeit temporarily, in Jefferson County), venue was proper.

¶ 19    Accordingly, we conclude that the juvenile court had subject matter jurisdiction to hear the case and venue was proper.

### IV.  Liberty Interests in Child

¶ 20    Grandmother contends that her fundamental associational rights with the child required that she be fully considered for placement of the child, and that it was error for her not to receive notice of the termination hearing. We construe this argument to be that grandmother has a constitutionally protected liberty interest in a relationship with the child, and that due process required that she receive notice of the termination hearing. We conclude that,

here, grandmother does not have a fundamental interest to associate with the child requiring notice of the proceeding.

### A. Grandmother's Liberty Interest

¶ 21    The Due Process Clauses to the United States and Colorado Constitutions protect individuals from arbitrary governmental restrictions on liberty interests. *People in Interest of A.M.D.*, 648 P.2d 625, 632 (Colo. 1982); *see also Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). They specifically guarantee that the government shall not deprive any person of an interest in "life, liberty, or property without due process of law." *M.S. v. People in Interest of A.C.*, 2013 CO 35, ¶ 9 (quoting U.S. Const. amend. XIV, § 1).

¶ 22    To establish a due process violation, an individual must show that he or she has a protected liberty interest. A protected familial liberty interest originates from the parent-child relationship, where parents are responsible for the care, custody, and management of their children. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000); *A.M.D.*, 648 P.2d at 632. Thus, in a proceeding for termination of the parent-child legal relationship, a biological parent has a due process right to certain procedural protections based on his or her interest in continuing the parental relationship. *People in Interest of*

*C.E.*, 923 P.2d 383, 385 (Colo. App. 1996) (citing *Lehr v. Robertson*, 463 U.S. 248 (1983); *Santosky v. Kramer*, 455 U.S. 745 (1982); *Quilloin v. Walcott*, 434 U.S. 246 (1978); *Stanley v. Illinois*, 405 U.S. 645 (1972)).

¶ 23    By contrast, the limited rights of grandparents are derived from statute.  Section 19-1-117(1) and (2), C.R.S. 2018, permits a grandparent or great-grandparent to seek visitation orders when there is a child-custody case or a case concerning the allocation of parental responsibilities, as long as it is in the child's best interests. *See also In re Adoption of C.A.*, 137 P.3d 318, 322-26 (Colo. 2006). Section 14-10-123(b) and (c), C.R.S. 2018, allows grandparents to seek an order granting them an allocation of parental responsibilities of a child if the child is not in the physical care of his or her parents or the child has been in the grandparents' physical custody for six months.  *See People in Interest of B.B.O.*, 2012 CO 40, ¶ 8.

¶ 24    Grandmother identifies no Colorado case law or statute supporting her claim of a fundamental interest in the society or custody of the child simply by virtue of their biological relationship. We have addressed a similar contention in *People in Interest of C.E.*,

9

923 P.2d 383, where a maternal aunt asserted that, as an extended family member, she had a protected liberty interest in the society and custody of her nephew commensurate with a natural parent. As a result, she argued, she was entitled to due process protections, including receiving notice of a termination hearing. A division of this court concluded that because the aunt did not have an existing extended family custodial relationship with the nephew, she did not have a constitutionally protected liberty interest in her nephew requiring that she receive notice of the termination hearing. *Id.* at 385-86. That is also the case here as grandmother did not have an existing custodial relationship with the child.

¶ 25    Grandmother's reliance on *People in Interest of C.P. v. F.P.*, 34 Colo. App. 54, 524 P.2d 316 (1974), for the proposition that a grandparent does not need to be joined in a case before he or she is accorded due process rights is misplaced. There the court held that,

> since the court may give custody following an adjudication of dependency and neglect to a relative, a relative is entitled to intervene at the dispositional stage upon application made to the court prior to the dispositional hearing. The court, however, need not give notice, nor

consider the rights of, relatives who have not made timely application.

*Id.* at 58, 524 P.2d at 319. The opinion goes on to say that the grandmother had a right to notice because she was an interested party. It did not — as grandmother claims here — say that this was a due process right afforded to grandmother because of her relationship with the child. This case is also inapplicable because grandmother, by her own admission, was aware that the child had been removed from her mother's care shortly after the child was born. Grandmother, however, did not file her motion to intervene until February 2017 — a year and a half after she was aware of the proceeding, after parental rights had been terminated, and after the child had been in another placement much of her life.

¶ 26    Moreover, those jurisdictions deciding whether grandparents have a constitutionally protected liberty interest in the society of their grandchildren have generally concluded that they do not. *See Mullins v. Oregon*, 57 F.3d 789, 794 (9th Cir. 1995) (finding no authority that supports "the proposition that a grandparent, by virtue of genetic link alone, enjoys a fundamental liberty interest in the adoption of her grandchildren"); *Graham v. Children's Servs.*

*Div., Dep't of Human Res.*, 591 P.2d 375, 379 (Or. Ct. App. 1979) (concluding that grandparents have no constitutionally recognized liberty interest requiring the protection of a hearing in a contested adoption case); *In re Adoption of Taylor*, 678 S.W.2d 69 (Tenn. Ct. App. 1984) (surveying law of other states and concluding that grandparents have no constitutionally protected interest in the society of their grandchildren).

¶ 27 Accordingly, we conclude that grandmother, here, does not have a constitutionally protected liberty interest in the society or custody of the child, where the grandmother (1) enjoys limited visitation rights derived from statute; and (2) only has a biological relationship with the child but no existing custodial relationship. This is so especially where, as here, grandmother was aware that the child was removed from her mother's care and mother's parental rights were later terminated.

### B. Notice of Termination Hearing

¶ 28 Grandmother also contends that, because her fundamental rights were at stake, it was error for her not to be notified of the termination hearing, even if the relevant statutes did not contain a notice provision.

¶ 29    Having concluded that grandmother did not have a liberty interest in the child, we next consider if notice of the termination hearing to grandmother was required under Colorado case or statutory law. We conclude that notice was not required.

¶ 30    The State Plan for Foster Care Adoption Assistance, 42 U.S.C. § 671(a)(29) (2018), provides, in pertinent part, that,

> [w]ithin 30 days after the removal of a child from the custody of the parent or parents of the child, the state shall exercise due diligence to identify and provide notice to the following relatives: all adult grandparents, all parents of a sibling of the child, where such parent has legal custody of such sibling, and other adult relatives of the child [that] . . .
>
> (A) specifies that the child has been or is being removed from the custody of the parent or parents of the child; [and]
>
> (B) explains the options the relative has under Federal, State, and local law to participate in the care and placement of the child, including any options that may be lost by failing to respond to the notice[.]

While the federal statute requires due diligence to notify relatives of a child's removal from his or her parents' care, it does not require notice of court hearings concerning the removal.

¶ 31    By contrast, the General Assembly has identified who should receive notice of hearings in dependency and neglect proceedings. Section 19-3-502(7), C.R.S. 2018, states that, in addition to parties, "the court shall ensure that notice is provided of all hearings and reviews held regarding a child to the following persons *with whom a child is placed*: Foster parents, pre-adoptive parents, or relatives." (Emphasis added.)  Section 19-3-605, C.R.S. 2018, which discusses requests for placements with family members, requires that a request by a grandparent, aunt, uncle, brother, or sister for the custody of a child whose legal relationship with his or her parents is subject to termination must be filed before the termination hearing begins.  The statute, however, expressly states that "[n]othing in this section shall be construed to require the child placement agency with physical custody of the child to notify said relatives . . . of the pending termination of parental rights." § 19-3-605(1).

¶ 32    Based on the foregoing, we conclude that the General Assembly did not grant relatives who do not have placement of the child, including grandparents, a right of notice to hearings in dependency and neglect cases.  Accordingly, there was no error

14

when grandmother did not receive notice of the termination hearing.

## V.  Petitions for Adoption

¶ 33     Grandmother contends that the juvenile court erred when it refused to allow grandmother to file a petition for the adoption of the child in the dependency and neglect case.  We disagree.

¶ 34     Neither the Children's Code nor the Juvenile Rules of Procedure specify that a petition for adoption cannot be filed into an existing case or must be filed into a new case.  However, grandmother cites no authority that requires the filing — or requires a judge to accept a filing — of a petition for adoption within a dependency and neglect case.

¶ 35     Moreover, section 19-1-309, C.R.S. 2018, which addresses the confidentiality of relinquishment and adoption information, specifically states that "[a] separate docket *shall* be maintained . . . for adoption proceedings."  (Emphasis added.)  "If the statutory language is clear, we interpret the statute according to its plain and ordinary meaning," *Specialty Rests. Corp. v. Nelson*, 231 P.3d 393, 397 (Colo. 2010), and the word "shall" is given a "mandatory connotation," *E.S.*, 49 P.3d at 1223.

¶ 36     Here, the General Assembly's language shows its intent that

adoption proceedings should be heard separately even if the

proceedings are related, such as a dependency and neglect

proceeding that later results in an adoption.  In addition,

grandmother fails to establish how she was harmed by the juvenile

court's denial as nothing precluded grandmother from timely filing

a petition in a separate court proceeding.

¶ 37     Accordingly, we conclude that the juvenile court did not err in

disallowing the filing of a petition for adoption within the

dependency and neglect proceeding.[1]

## VI.  Grandparent Visitation

¶ 38     Grandmother contends that the juvenile court erred in

terminating her visitation rights with the child.  We disagree.

¶ 39     The Children's Code defines a grandparent as "a person who is

the parent of a child's father or mother, who is related to the child

by blood, in whole or by half, adoption, or marriage."

§ 19-1-103(56)(a), C.R.S. 2018.  Section 19-1-103(56)(b), however,

expressly excludes as a grandparent any parent of a child's legal

---

[1] Even if the court should have allowed the filing, it was not legally obligated to grant the requested relief for all the reasons discussed in this opinion.  *See* C.R.C.P. 5(e).

mother or father whose parental rights have been terminated. *See also People in Interest of J.W.W.*, 936 P.2d 599, 600 (Colo. App. 1997).

¶ 40    The right to visitation between a parent and child is eliminated by a termination order. *People in Interest of M.M.*, 726 P.2d 1108, 1124 (Colo. 1986). After mother's parental rights were terminated, any visitation rights that grandmother may have had by virtue of being the child's grandmother were also extinguished. *People in Interest of N.S.*, 821 P.2d 931, 932-33 (Colo. App. 1991) (grandparents' statutory visitation rights did not survive termination of natural parents' legal rights).

¶ 41    Accordingly, the juvenile court did not err in terminating grandmother's visitation.

### VII.  *In Pari Materia* and Judicial Legislation

¶ 42    Grandmother contends that the statutes governing this case must be read *in pari materia* and that the juvenile court erred in emphasizing the child's attachment to the foster parents to the exclusion of the legislature's intent to preserve blood relationships. She also argues that the juvenile court's overreliance on attachment displayed an impermissible exercise of judicial legislation.

¶ 43 *"In pari materia"* means "[o]n the same subject; relating to the same matter." Black's Law Dictionary 862 (10th ed. 2014). It is "a canon of construction that statutes that are *in pari materia* may be construed together, so that inconsistencies in one statute may be resolved by looking at another statute on the same subject." *Id.*

¶ 44 Grandmother fails to identify with specificity the statutes that the juvenile court failed to read *in pari materia,* how the juvenile court misapplied the law, or how the law should have been interpreted. This contention is therefore not properly before us because grandmother does not identify supporting facts, make specific arguments, or set forth specific authorities. *People in Interest of D.B-J.*, 89 P.3d 530, 531 (Colo. App. 2004).

## VIII. Conclusion

¶ 45 The judgment is affirmed.

JUDGE TAUBMAN and JUDGE TERRY concur.