24CA2256 Peo in Interest of HSA 02-26-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA2256
Arapahoe County District Court No. 23JV30148
Honorable Bonnie H. McLean, Judge

The People of the State of Colorado,

Appellee,

In the Interest of H.S.A. and A.A., Children,

and Concerning T.C. and B.A.,

Appellants.

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE FOX
Kuhn and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced February 26, 2026

Ron Carl, County Attorney, Sylvia Gieger, Assistant County Attorney, Aurora, Colorado, for Appellee

Sheena Knight, Guardian Ad Litem

Lindsey Parlin, Office of Respondent Parents' Counsel, Denver, Colorado, for Appellant T.C.

Beth Padilla, Office of Respondent Parents' Counsel, Durango, Colorado, for Appellant B.A.

¶ 1 In this dependency and neglect action, T.C. (mother) and B.A. (father) appeal the judgment terminating their parent-child legal relationships with H.S.A. and A.A. (the children). We affirm.

## I. Background

¶ 2 The Arapahoe County Department of Human Services (the Department) received a referral about then-newborn H.S.A., raising concerns that mother did not know she was pregnant and mother's and father's parental rights to another child were recently terminated in another county. The Department opened a voluntary case and placed the child with a paternal relative under a safety plan.

¶ 3 Nearly a year later, the Department filed a petition in dependency and neglect alleging that mother and father failed to engage in the voluntary case. Less than a month later, A.A. was born, and the Department amended the petition to include her.

¶ 4 After a deferred adjudication agreement was unsuccessful, the juvenile court adjudicated the children dependent and neglected and adopted the same treatment plans that were in place for the parents in the voluntary case. The Department then moved to terminate both parents' parental rights. Eighteen months after the

petition was filed, the juvenile court terminated mother's and father's parental rights following a contested hearing.

## II. Father's Motion to Continue

¶ 5    Father first contends that the court erred by denying his oral motion to continue the termination hearing.  We disagree.

¶ 6    A continuance motion is left to the sound discretion of the trial court, and its ruling will not be disturbed on appeal absent a clear abuse of that discretion.  *People in Interest of A.J.*, 143 P.3d 1143, 1150 (Colo. App. 2006).  A court abuses its discretion when its decision misapplies the law or is manifestly arbitrary, unreasonable, or unfair.  *People in Interest of A.N-B.*, 2019 COA 46, ¶ 9.  In ruling on a motion to continue, the court should balance the need for the orderly and expeditious administration of justice against the facts underlying the motion, considering the children's need for permanency.  *Id.*  When, as here, a case is subject to expedited permanency planning standards, the court "shall not grant a delay unless good cause is shown and unless the court finds that the best interests of the child will be served by granting a delay."  § 19-3-602(1), C.R.S. 2025.

¶ 7    Here, father sought a continuance at the beginning and end of the termination hearing to give counsel "the opportunity to try and talk to [father's] therapist and try to see if [they would] be an appropriate witness to call in this case." The court found that this did not constitute good cause as required. The court found that mental health services were available to father from the time the petition was filed, but father chose not to engage in mental health therapy or disclose his work with a therapist sooner. The court found that, even if father's therapist provided information about possible services that might benefit him, the Department had already offered specialized services that father did not engage with. The record supports these findings. Importantly, father did not assert — and the court did not find — that a continuance would have been in the children's best interests.

¶ 8    We therefore determine that the court did not err by denying father's continuance request.

¶ 9    Relatedly, father asserts that "the trial court partially made Father's attorney ineffective by denying the request for a continuance." But an ineffective assistance of counsel claim must be based on counsel's performance, not findings or orders issued by

the court.  To successfully assert such a claim, a parent must show that (1) counsel's performance was outside the wide range of professionally competent assistance and (2) the parent was prejudiced by counsel's errors.  *A.R. v. D.R.*, 2020 CO 10, ¶ 48.  We read father's claim that his counsel should have subpoenaed the therapist as a claim that counsel's performance was outside the wide range of professionally competent assistance.  But the record suggests, and father does not dispute, that father waited until the termination trial to disclose to his counsel that he was working with a therapist, foreclosing his counsel's ability to issue a timely subpoena.

¶ 10   Without providing any details, father broadly asserts that the therapist "would have had critical information for the court to consider in determining whether father was disabled."  However, when a parent's allegations lack sufficient specificity, we may summarily deny the ineffective assistance claim.  *People in Interest of C.H.,* 166 P.3d 288, 291 (Colo. App. 2007).

¶ 11   Even if we were to consider this broad assertion as an allegation of prejudice, the juvenile court already considered, and rejected, father's claim.  The court found that, even if father's

4

therapist testified that father experienced "more serious mental health diagnoses, it wouldn't change the outcome" of the termination hearing because the Department provided father referrals for disability-appropriate providers, with which father did not engage.

¶ 12     Therefore, to the extent father claims that the circumstances around his counsel's continuance motion resulted in ineffective assistance, we reject his claims.

### III.     Expert Qualification

¶ 13     Father next contends that the juvenile court erred by qualifying the caseworker as an expert because it failed to make the findings of reliability and usefulness required under CRE 702 and *People v. Shreck*, 22 P.3d 68 (Colo. 2001).

¶ 14     The juvenile court must make findings regarding reliability and usefulness "when a parent properly objects to the admissibility of [caseworker expert] testimony." *People in Interest of A.F.*, 2025 COA 76, ¶ 2.  But father did not object to the caseworker's testimony at trial.  Nor did he raise any concern, as he does now, that the caseworker's "testimony was not scientific in nature and therefore . . . not appropriate expert testimony."  By stating that

"this particular expert [cannot] opine on things that would be of assistance in this case," father objected to the caseworker's qualifications, not the testimony being offered. The juvenile court appropriately addressed father's objection by determining that the witness's experience and certification through the state was sufficient to meet the qualification requirement. *See People in Interest of A.E.L.*, 181 P.3d 1186, 1193 (Colo. App. 2008) (holding that caseworkers were properly qualified as experts based on their training and experience); *see also A.F.*, ¶ 23 ("If a witness is sufficiently qualified to offer the proposed opinion, and the juvenile court so finds, any challenges to the witness's qualifications go to the weight of the testimony, not its admissibility.").

¶ 15 Because the additional objections father raises on appeal were not presented to the juvenile court, we decline to address them. *See People in Interest of M.B.*, 2020 COA 13, ¶ 14; *People v. Ujaama*, 2012 COA 36, ¶ 37 (explaining that issues are unpreserved when the grounds raised on appeal are different from those raised below).

¶ 16 Father urges us to determine that the court erred by overruling his objection to the caseworker testifying that father was not in compliance with the portion of his treatment plan that

6

required him to communicate with her. While father now claims that the caseworker otherwise testified "beyond her area of expertise," he did not object to any of those instances before the juvenile court, and he does not offer any analysis now to explain why communication with father fell outside the caseworker's experience. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) (a party may not merely mention a possible argument in the most skeletal way, leaving the court to be mind-readers and do counsel's work); *see also In re Parental Responsibilities Concerning S.Z.S.*, 2022 COA 105, ¶ 29 (appellate court will not consider arguments when a parent "developed no legal or factual argument in support of [the] assertion").

## IV.  Father's Fitness

¶ 17    Father next contends that the court erred by finding that he could not become fit within a reasonable period of time and by not giving him additional time to continue complying with his treatment plan. We disagree.

¶ 18    "In determining whether a parent's conduct or condition is likely to change within a reasonable time, the court may consider whether any change has occurred during the proceeding, the

parent's social history, and the chronic or long-term nature of the parent's conduct or condition." *S.Z.S.*, ¶ 24.

¶ 19    What constitutes a reasonable time is fact specific and must be determined by considering the physical, mental, and emotional conditions and needs of each particular child. *Id.* at ¶ 25. A "reasonable time" is not an indefinite time. *Id.* And even when a parent has made recent progress on a treatment plan, the court is not required to give the parent additional time to comply. *See id.* at ¶¶ 24-25. In addition, the court must place the children in a permanent home as expeditiously as possible in a case subject to the expedited permanency planning provisions. §§ 19-1-102(1.6), 19-1-123, C.R.S. 2025.

¶ 20    Father claims that he "was complying with a great deal of his treatment plan." True, he completed parenting classes and gained employment and housing. But he did not attend family time with the children for seven months. The caseworker testified that applying the skills taught in parenting programs was "the biggest component" and "because he was not attending his parenting time visits, he was unable to demonstrate that." While father

8

maintained a referral with a life skills provider, he last met with the provider six months before the hearing.

¶ 21    The caseworker testified that father reported completing a mental health evaluation and engaging in mental health treatment, but she did not know what that treatment entailed because father never provided a proper release of information. Father testified that he went to a mental health provider on his own for issues unrelated to his treatment plan.

¶ 22    As we will not reweigh the evidence, we defer to the juvenile court's finding that "[t]here has been a little compliance [with the treatment plan] but not substantial compliance to meet the children's physical, mental, and emotional needs." *See In re Marriage of Kann*, 2017 COA 94, ¶ 36 ("[O]ur supreme court has . . . expressed unbridled confidence in trial courts to weigh conflicting evidence."); *see also Carrillo v. People*, 974 P.2d 478, 486 (Colo. 1999) (recognizing "the trial court's unique role and perspective in evaluating the demeanor and body language of live witnesses" and "discourag[ing] an appellate court from second-guessing those judgments based on a cold record").

¶ 23    Likewise, the record supports the juvenile court's finding that "things have actually gotten significantly worse over time with the visits and the lack of engagement with services." The court appropriately considered father's failure to attend family time without good cause, the termination of father's parental rights to another child, and the children's specialized needs when finding that "additional time would not be in the children's best interest." In short, the court did not err by finding that father was unlikely to become fit within a time that would be reasonable for these young children.

## V.    Reasonable Efforts

¶ 24    Mother contends that the juvenile court erred by finding that the Department made reasonable efforts to rehabilitate her because it failed to make "necessary accommodations" under the Americans with Disabilities Act (ADA).

¶ 25    The services provided pursuant to section 19-3-208 generally must comply with the ADA, its related amendments, and its implementing regulations. § 19-3- 208(2)(g), C.R.S. 2025. The ADA, 42 U.S.C. §§ 12101-12213, and section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 94, impose an affirmative

duty on public entities to make reasonable accommodations for qualified individuals with disabilities. *People in Interest of S.K.*, 2019 COA 36, ¶ 18 (citing 28 C.F.R. § 35.130(b)(7) (2018)); *People in Interest of C.Z.*, 2015 COA 87, ¶ 12. The ADA was adopted to ensure "equality of opportunity" and "full participation" for individuals with disabilities. *People in Interest of T.B.*, 12 P.3d 1221, 1223 (Colo. App. 2000). Specifically, it provides that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity. *C.Z.*, ¶ 11.

¶ 26    A parent is responsible for disclosing to the Department and the juvenile court information regarding a disability and any reasonable accommodations necessary to address the disability. *See S.Z.S.*, ¶ 16. A department can only accommodate, and the court can only address, disabilities that are known to them. *S.K.*, ¶ 22.

¶ 27    Mother filed a "Notice of Americans with Disabilities Act Applicability," claiming that she had a qualifying disability based on anxiety, post-traumatic stress disorder, and possible "intellectual

and/or developmental disabilities." The notice claimed that a "request for accommodations is filed simultaneously with this [n]otice." But no request for accommodations appears in the record, and the caseworker testified that mother never requested accommodations, even informally.

¶ 28 The juvenile court found that despite mother never requesting accommodations, the Department provided her with services that would have addressed her claimed disabilities, including life skills, parenting education, and referrals to specialized service providers.

¶ 29 The record supports these findings. The caseworker testified that she provided referrals for life skills and mental health services to treatment providers that were specifically trained to support parents with disabilities. The caseworker testified that those providers, and the Department, modified their "standard practice" to support mother's claimed disability. But mother did not engage in the specialized life skills support offered, and the provider discharged mother five months before the termination hearing due to her lack of engagement. Mother never participated in any of the additional supported family time that was offered to her. Instead,

at the time of the termination hearing, mother had not seen the children for more than seven months.

¶ 30    Mother claims that the Department failed to follow the recommendations from her cognitive evaluation, specifically recommendations that mother work with a Community Center Board and the Division of Vocational Rehabilitation. Setting aside the issue of whether the Department was required to do so as part of its reasonable efforts obligation, we discern no error. *See People in Interest of C.N.*, 2018 COA 165, ¶ 14 (declining to resolve an issue where outcome would not change). Mother's evaluation is not in the record, and it is unclear if the recommendation was for mother to "work with a Community Center Board" as mother now claims or to "connect with community-based services" as the caseworker initially testified. But the juvenile court found, with record support, that the Department made appropriate referrals to community-based services. We must presume that the court's findings and conclusions are supported by the evidence when the record is incomplete. *Hock v. New York Life Ins. Co.*, 876 P.2d 1242, 1252 (Colo. 1994). Furthermore, the record clearly supports the court's finding that mother did not engage in the specialized services that

the Department provided to her. The court may properly consider a parent's unwillingness to participate in treatment when determining whether a department made reasonable efforts. *See People in Interest of A.V.*, 2012 COA 210, ¶ 12.

¶ 31    Mother also claims that the Department failed to individualize its approach to her treatment. But the caseworker provided undisputed testimony that she provided referrals to certain providers "specifically because" of mother's disability and took steps to "break down" the steps for mother in an effort to better support her. Indeed, the juvenile court found that "a litany of services" were offered to mother but she declined to engage.

¶ 32    We therefore discern no error in the juvenile court's determination that the Department provided reasonable efforts to mother that were not successful in rehabilitating her.

## VI.    Disposition

¶ 33    The judgment is affirmed.

JUDGE KUHN and JUDGE SULLIVAN concur.