[No. G024874. Fourth Dist., Div. Three. June 10, 1999.]

CYNTHIA C., Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
ORANGE COUNTY SOCIAL SERVICES AGENCY et al., Real Parties
in Interest.

**COUNSEL**

Martha Franco for Petitioner.

No appearance for Respondent.

Laurence M. Watson, County Counsel, and Ward Brady, Deputy County Counsel, for Real Party in Interest.

Harold F. LaFlamme and Craig E. Arthur for Minor.

**OPINION**

**CROSBY, Acting P. J.**—Cynthia C. petitions this court for extraordinary relief from juvenile court orders denying reunification services and scheduling a Welfare and Institutions Code section 366.26 permanency hearing for her daughter Christina M. Cynthia contends the court abused its discretion when it declined to allow her to withdraw her waiver of reunification services. Having reviewed her petition on the merits, we deny relief. (Cal. Rules of Court, rule 39.1B.)

## I

Christina is her mother's oldest child and has two half siblings, Hope and Henry C.[1] In June 1997, Christina was declared a dependent child when she was six years old. She was abused by her stepfather, Henry C., and in the cross-fire of domestic violence between Henry and Cynthia.[2] Before the declaration of dependency, Christina was released to her parents. They were actively involved in services at the time of the dispositional hearing in June, and Christina was allowed to remain in their custody under family maintenance supervision.

From June 1997 until August 1998, the family received extensive parenting and counseling services. They completed parenting education classes, went to individual and couples therapy, received in-home therapy for Christina, including a hands-on parenting skills component, and had in-home parenting skills training through Boys Town.

In spite of this assistance, the parents were openly hostile toward Christina. Both the parents' therapist and Christina's therapist concluded they were emotionally abusive to her. The parents attributed her problem behaviors, including lying and stealing, impulsivity, hyperactivity, somatic complaints, explosive tantrums, fearfulness, and inability to respond to directions and separation difficulties, to "planned deviousness" on seven-year-old Christina's part.

In response to these behaviors, Christina was assessed for attention deficit hyperactivity disorder (ADHD) by two psychiatrists. Both concluded her behavior was more likely attributable to anxiety stemming from emotional abuse and neglect rather than ADHD. As the social worker, Deborah Phillipson, poignantly noted, "[T]he showering of professional attention on . . . Christina, [sic] helps fill the void of love, and attention, [sic] she appears to be lacking from her [parents.]"

On August 10, 1998, Christina struck both Cynthia and her half brother. Cynthia then called Phillipson and asked her to remove Christina from the home. When Phillipson arrived, Cynthia stated in Christina's presence that she was afraid of her daughter; she loved her but had to think about the rest of the family; and she was at the "end of her rope." Cynthia informed Phillipson she had consulted with Henry and they agreed Christina should be

---

[1]Hope and Henry were both made dependents of the juvenile court along with Christina. They have remained in their parents' custody and are not involved in this writ proceeding.

[2]Christina has two alleged fathers, neither of whom participated in the dependency proceeding. For purposes of convenience, we will refer to Cynthia and Henry collectively as Christina's parents.

removed and placed for adoption. While she was relating this, Christina interjected that Henry said he would make the telephone calls if Cynthia did not.

Phillipson urged Cynthia to reconsider for a few days, but she insisted Christina should be removed immediately. During this exchange Christina clung to her mother, crying and pleading, "Give me another chance. I will be good. Please don't give me up." Phillipson had to spend several hours with Christina until she was calm enough to be brought into protective custody.

Orange County Social Services Agency (SSA) filed a subsequent petition pursuant to Welfare and Institutions Code section 342, alleging Christina had been abandoned and emotionally abused. She was ordered detained on August 14, 1998. On that date Cynthia offered to immediately sign a relinquishment for adoption. Approximately one month later, on the first date set for adjudication of the subsequent petition, Cynthia signed a Judicial Council form waiving her right to reunification services. After voir dire of Cynthia by both her attorney and the court, the judge accepted Cynthia's waiver, concluding it was knowingly and intelligently made. The hearing was then continued to October in order to perfect service on one of the alleged fathers.

In October the matter was again continued to January 6, 1999. On that date, Cynthia for the first time indicated she wished to withdraw her waiver of services. This change of mind occurred after Cynthia and Henry had been ostracized by her extended family at Christmastime for giving Christina up for adoption. The hearing was again continued, and SSA was ordered to address the impact of Cynthia's change of mind. By the time Cynthia expressed her regrets, Christina had been in a prospective adoptive home in another county for one month.

The hearing actually occurred in early February. Cynthia presented no evidence that she somehow mistakenly waived reunification services or was coerced into doing so. Instead, she stated she simply changed her mind about having Christina adopted and had done so within days of having Christina removed from her custody, although she waited five months to inform anyone of this decision.

Phillipson noted Christina was doing very well in her prospective adoptive home. Although she still had behavior problems, they had lessened to a great degree. Christina referred to her caretakers as "mom and pop," and they were already engaged in therapy with her. Phillipson believed Christina would be emotionally devastated if her parents were reintroduced into her life after rejecting her.

The court first sustained the subsequent petition and ordered Christina removed from Cynthia's custody. It then declined to permit Cynthia to revoke her waiver of services. It found by clear and convincing evidence that she had entered into a knowing and intelligent waiver in September. It also found she had made no showing it would be in Christina's best interests to start reunification services. The court therefore declined to order services or visitation and scheduled a Welfare and Institutions Code section 366.26 permanency hearing.

## II

■ Cynthia contends the court abused its discretion when it refused to permit her to withdraw her waiver of reunification services before the adjudication of the subsequent petition and dispositional hearing. If the context were not so sad, the notion would be laughable.

The relevant portion of Welfare and Institutions Code section 361.5, subdivision (b)(13) reads as follows: "Reunification services need not be provided to a parent . . . described in this subdivision when the court finds, by clear and convincing evidence, any of the following: [¶] . . . [¶] (13) That the parent . . . of the child has advised the court that he or she is not interested in receiving family maintenance or family reunification services or having the child returned to or placed in his or her custody and does not wish to receive family maintenance or reunification services. [¶] The parent . . . shall be represented by counsel and shall execute a waiver of services form to be adopted by the Judicial Council. The court shall advise the parent or guardian of any right to services and of the possible consequences of a waiver of services, including the termination of parental rights and placement of the child for adoption. The court shall not accept the waiver of services unless it states on the record its finding the parent . . . has knowingly and intelligently waived the right to services."

There is no provision in the code or the Rules of Court for withdrawal of a waiver. (See Welf. & Inst. Code, § 361.5; Cal. Rules of Court, rule 1456 (f).) Nor have we found any authority discussing whether a court may or should address a request to withdraw a waiver of reunification services. Surely that would be permissible in appropriate cases where the requirements of the statute were not satisfied or a parent was coerced or misled into waiving her rights. Further, when a parent has an immediate change of heart and promptly seeks to withdraw the waiver, relief might be appropriate

In this case, however, an extensive hearing was conducted on the propriety of holding Cynthia to her waiver. No evidence emerged demonstrating

she was misled, coerced, or confused when she signed the form and gave her waiver on the record. To the contrary, all the evidence demonstrated her appreciation of what she was doing and that in January she simply changed her mind. Although Cynthia claims to have changed her mind about wanting to give up Christina for adoption shortly after she asked Phillipson to remove her from the home, she signed the waiver *after* that change of mind and failed to say anything to Phillipson, her attorney, or the court for months after that.

Consequently, we cannot conclude the court abused its discretion when it declined to allow Cynthia to withdraw her waiver of services. A parent may waive his or her constitutional rights to relationships with the child "as long as the waivers are 'voluntary [citations] and knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" (*Tyler* v. *Children's Home Society* (1994) 29 Cal.App.4th 511, 546 [35 Cal.Rptr.2d 291], quoting *San Diego County Dept. of Pub. Welfare* v. *Superior Court* (1972) 7 Cal.3d 1, 10 [101 Cal.Rptr. 541, 496 P.2d 453].) It does not matter at what stage of the proceedings the waiver occurs for the court to find it was knowing and intelligent. There is simply no evidence to support a conclusion that Cynthia's waiver of services was anything but an informed decision. Absent such evidence, and given the length of time between Cynthia's submission of her waiver and her attempt to rescind her decision, it would have been an abuse of discretion to order reunification services.

The petition is denied.

Rylaarsdam, J., and Bedsworth, J., concurred.