Filed 12/16/22 In re P.G. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re P.G., a Person Coming Under the Juvenile Court Law. | B319907 (Los Angeles County Super. Ct. No. 17CCJP00200C) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. D.G., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Nancy A. Ramirez, Judge. Conditionally reversed and remanded.

David M. Yorton, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, Sally Son, Deputy County Counsel, for Plaintiff and Respondent.

_____

## I. INTRODUCTION

D.G. (father) appeals from orders denying his request, pursuant to Welfare and Institutions Code[1] section 388, to withdraw his waiver of reunification services and terminating his parental rights over the child P.G., born in 2013 (child), pursuant to section 366.26. We will conditionally reverse and remand for the juvenile court to apply the correct legal standard in adjudicating father's motion to withdraw his waiver of reunification services.

## II. BACKGROUND

A.   *Prior Dependency Jurisdiction*

In December 2017, the juvenile court sustained a dependency petition regarding the child and her younger brother K.G., which alleged that their mother H.D. (mother) had a history of substance abuse and that mother and father had a

---

[1]    Further statutory references are to the Welfare and Institutions Code.

history of domestic violence.[2]  The child was ordered suitably placed with maternal grandparents and the parents received family reunification services.  Maternal grandparents had cared for the child since her birth.

The juvenile court subsequently terminated jurisdiction, granted mother sole physical custody of the child, granted the parents joint legal custody, and granted monitored visitation for father.

B.      *Current Dependency Proceeding*

On July 20, 2020, the Department filed a section 300 petition, alleging that the child was at risk of serious physical harm because of mother's criminal activity and her history with drugs and failure to comply with court-ordered services.

In August 2020, the child referred to father and mother by their first names.  She reported not knowing whether she enjoyed spending time with father but was happy at maternal grandparents' home.

In a jurisdiction/disposition report, filed in August 2020, the Department stated that it would assess whether the child should remain in the care of maternal grandparents under legal guardianship.

On October 9, 2020, the Department filed an amended section 300 petition which alleged that father's history of substance abuse, domestic violence, and inability to provide the child with basic necessities placed the child at risk of serious physical harm.

---

[2]      K.G. is not at issue in this appeal and mother is not a party to this appeal.

In a last minute information report filed October 14, 2020, father stated that he "'does not mind if . . . [m]aternal [g]randparents ha[ve] full legal guardianship over the children as long as he maintained some of his rights.'" Specifically, father wanted to have unmonitored visitation with the child. Maternal grandmother reported that father visited "'on and off'" during weekends. Maternal grandmother was willing to provide permanency to the child, either through adoption or legal guardianship.

On October 15, 2020, the juvenile court sustained the counts alleging that mother endangered the children with her criminal activity and that father was unable to provide basic necessities.

In a last minute information report filed November 2, 2020, maternal grandmother reported that father was "'okay'" with the child being adopted. Father stated he had a good relationship with maternal grandparents and appreciated what they did for the children.

In a last minute information report filed December 17, 2020, the Department reported that father approved of the child remaining in maternal grandparents' care and approved of the maternal grandparents being granted legal guardianship. Maternal grandmother was also open to a legal guardianship.

On December 18, 2020, father executed and filed a waiver of reunification services for the child. Father's counsel signed a declaration stating that he had explained father's rights to him.

At the December 18, 2020, disposition hearing, the juvenile court asked father whether he understood that he was "giving up the right to have services that could help [him] regain custody of [the child]." Father stated he understood. Father also confirmed

4

that he had either signed the form or authorized his attorney to do so. The court stated that father had entered into a valid waiver and then later issued an order finding that father's waiver was knowing, intelligent, and voluntary. The court observed that "as to disposition, father is waiving reunification services and is in agreement with a plan of legal guardianship by the maternal grandparents."

At the March 1, 2021, disposition hearing, the juvenile court declared the child a dependent of the court, ordered the child suitably placed, and set the matter for a permanency plan hearing under section 366.26.

C. *Subsequent Reports*

In a section 366.26 report filed on June 11, 2021, the Department reported that maternal grandparents were interested in and willing to adopt the child and the child reported feeling "'good'" about being adopted. The Department identified the permanent plan for the child to be adoption.

At the June 28, 2021, hearing, the court advised father that the Department recommended adoption as the permanent plan. Father responded that "this is the first time they are telling me about adopting [the child]. . . . [N]o one told me about adoption." The court ordered the Department to re-interview maternal grandparents regarding adoption, refer the case to the Children's Consortium for a post adoption agreement, and work with father regarding visitation.

In a section 336.26 report filed on September 23, 2021, the Department reported maternal grandparents remained committed to adopting the child. According to the maternal

5

grandparents, father stated, on more than one occasion, that he was in agreement with the adoption plan.

In a last minute information report filed December 27, 2021, the Department reported that the child had sporadic visits with father once per weekend for one to three hours. The child engaged "'okay'" with father but did not want to live with either parent and wished to remain in maternal grandparents' care. Father reported the visits were "okay" and that he "hangs out" while the child and half-sibling played.

In a last minute information report filed February 25, 2022, maternal grandmother stated that the child viewed maternal grandparents as her mother and father. The Department concluded that the child had a special bond and attachment to maternal grandparents and disrupting that bond could have long lasting emotional effect on the child. It once again recommended adoption by maternal grandparents as the permanent plan.

D.    *Section 388 Petition and Reports*

On February 22, 2022, father filed a petition, pursuant to section 388, to change the court's prior December 18, 2020, order, and allow father to withdraw his prior waiver. According to father, the order entered on that date "should be changed" because he had filed his prior waiver of reunification services "with the understanding that the recommended permanent plan for [child] was legal guardianship with her caretakers/maternal grandparents, as he wish[ed] to maintain their [*sic*] parental relationship." Father also explained that the change he requested was in the child's best interest.

6

In a section 388 response report, filed April 1, 2022, the Department reported that father was not consistent in his visits with the child and the child did not have a bond with him. The child was not comfortable with father and was not sad when father left. Father acknowledged that the child was happy in maternal grandparents' care, but complained that no one had taken the time to observe his bond with the child.

The child did not recall living anywhere other than with maternal grandparents. She was very comfortable with being adopted by maternal grandparents. She would not be sad if she did not live with mother and father because she "'[didn't] know them a lot.'"

In a last minute information filed April 12, 2022, the child stated she was not comfortable with father because she was "'kinda'" scared of him. The child reported that father would yell at half-sibling and she was concerned that he would yell at her too.

E.      *Section 388 and 366.26 Hearing*

On April 13, 2022, the juvenile court conducted a hearing on father's section 388 petition. Father's counsel argued that the court should grant the petition because there had been a change in circumstance. Father stated that he had waived his reunification services based on "an agreement" that the permanent plan would be legal guardianship but that the maternal grandparents had "reneged on that agreement . . . ." Father's counsel added that it would be in the child's best interest to grant the petition because father had been visiting her "on an almost weekly basis" and the two shared "a bond."

Counsel for the child requested that the petition be denied. Counsel argued that granting the petition was not in the child's best interest because she had been very clear that she wanted to be adopted by maternal grandparents. The Department joined in child's counsel's argument.

Following argument, the juvenile court denied father's section 388 petition. The court agreed there was a change in circumstance because the Department's recommended permanent plan had changed from legal guardianship to adoption. The court concluded, however, that it would not be in the child's best interest for father to receive reunification services. The court noted that the child "unequivocally stated multiple times she wishe[d] to be adopted by her current caregivers. While they are her maternal grandparents, [she] does not refer to them as grandparents, but as mom and dad. In addition, she has been living with them since she was a day old." The court found that while father's communication and contact with the child was fairly consistent, it was not enough to overcome the best interests of the child.

The juvenile court then proceeded to conduct the section 366.26 hearing. After hearing arguments by counsel, the court found that the child was adoptable and that no exception to adoption applied. It therefore ordered parental rights terminated. Father timely appealed.

## III. DISCUSSION

Father contends that the juvenile court applied the wrong legal standard when it denied his motion to withdraw his waiver of reunification services. We agree.

"There is no provision in the [Welfare and Institutions] [C]ode or the Rules of Court for withdrawal of a waiver [of reunification services.] [Citations.] . . . . Surely [allowing such a withdrawal] would be permissible in appropriate cases where the requirements of the statute were not satisfied or a parent was coerced or misled into waiving her rights." (*Cynthia C. v. Superior Court* (1999) 72 Cal.App.4th 1196, 1200 (*Cynthia C.*).) We review the juvenile court's denial of a motion to withdraw a waiver of reunification services for an abuse of discretion. (See *id.* at p. 1201.) A court abuses its discretion when it applies the wrong legal standard. (*Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733; *In re. M.W.* (2018) 26 Cal.App.5th 921, 932.)

Although he styled his motion as a petition to change a prior order pursuant to section 388, father sought to withdraw his prior waiver of reunification services; and, the "name of a motion is not controlling . . . ." (*Powell v. County of Orange* (2011) 197 Cal.App.4th 1573, 1577.) The juvenile court considered the best interest of the child but that is not the determinative issue. The court needed to make a finding on whether father had established that he had been misled when he waived reunification services pursuant to *Cynthia C., supra*, 72 Cal.App.4th at page 1200. Accordingly, we will remand for the court, in the first instance, to exercise its discretion whether to

9

grant father's motion to withdraw his waiver. (See *In re Donnovan J.* (1997) 58 Cal.App.4th 1474, 1478.)[3]

---

[3] Father's challenge to the court's order terminating his parental rights is based solely on his argument that the court erred in denying his request to withdraw his waiver of reunification services.

# IV.  DISPOSITION

The orders denying father's section 388 petition and terminating his parental rights are conditionally reversed and remanded for the juvenile court to exercise its discretion whether to grant or deny father's request to withdraw his waiver of reunification services pursuant to *Cynthia C.*, *supra*, 72 Cal.App.4th at page 1200.  If the request to withdraw the waiver is denied, the court may reinstate the order terminating father's parental rights.  If the request to withdraw the waiver is granted, the court shall conduct further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

RUBIN, P. J.

BAKER, J.

11